Reginald V. **BROUGHTON** et al.,
Plaintiffs,

v.

Albert **BREWER**, Governor of the State of Alabama, et al., Defendants.

James **BAINES** et al., Plaintiffs,

v.

MacDonald **GALLION**, Attorney General of Alabama, et al., Defendants.

Civ. A. No. 5266-68-T.

United States District Court
S. D. Alabama, S. D.

Civ. A. No. 68-676.

United States District Court
N. D. Alabama, W. D.

March 13, 1969.

Vernon Z. Crawford, Mobile, Ala., and Jonathan Shapiro, New York City, for plaintiffs, Broughton and others.

Gordon Madison, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for defendants Brewer and Gallion.

Allan R. Cameron, Mobile, Ala., for defendant Bridges.

T. Raymond Williams, Asst. City Atty., Mobile, Ala., for defendants Mims, Collins and Robinson.

262

Sydney S. Pfleger, Chief Asst. Dist. Atty., Mobile, Ala., for defendant Booth.

Richard Singer, Civil Liberties Union, University, Ala., for plaintiffs Baines and others.

J. Wagner Finnell, City Atty., Tuscaloosa, Ala., for defendant Shelby.

Gordon Madison, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for defendants Gallion and Lackey.

Before RIVES, Circuit Judge, and LYNNE and THOMAS, District Judges.

OPINION AND ORDER

RIVES, Circuit Judge:

For purposes of trial, we consolidated these two separate and factually unrelated actions challenging the constitutionality of the vagrancy statute of the State of Alabama.[1]

1. Code of Ala. of 1940, Tit. 14, §§ 437, 438, 439 (1958 rev.).

"§ 437. *Vagrancy defined.*—The following described persons are vagrants:

"(1) Any person who wanders or strolls about in idleness, or lives in idleness, who is able to work, and has no property sufficient for his support.

"(2) Any person leading an idle, immoral, or profligate life, who has no property sufficient for his support, and who is able to work, and does not work.

"(3) Any able-bodied person having no property sufficient for his support, who loafs, loiters, or idles in any city, town, or village, or upon a public highway, or about a steamboat landing, or a railroad station, or any other public place in this state, or any place where intoxicating liquors are sold, without any regular employment.

"(4) Any person trading or bartering stolen property, or who unlawfully sells or barters any sprituous, vinous, or malt or other intoxicating liquors.

"(5) Any person who is a common drunkard.

"(6) Any person who is a professional gambler.

"(7) Any able-bodied person who is found begging.

"(8) Any able-bodied person who shall abandon his wife and children, or either of them, without just cause, leaving her or them without sufficient means of subsistence, or in danger of becoming a public charge.

"(9) Any person who is a prostitute.

"(10) Any person who is a keeper, proprietor or employee of a house of prostitution.

"(11) Any person who is a keeper, proprietor or employee of a gambling house.

"(12) Any person who has no property sufficient for his support and who is able to work and does not work, but hires out his children or allows them to hire out.

"(13) Any person over the age of twenty-one years, able to work, and who does not work, and has no property sufficient for his support, and has not some means

of a fair, honest, and reputable livelihood, is a vagrant.

"§ 438. *Vagrancy a crime, penalty and punishment for.*—Vagrancy is a crime, and any person convicted thereof shall be fined not more than five hundred dollars, and may also be sentenced to hard labor for the county for not more than twelve months.

"§ 439. *Burden of proof in prosecution for vagrancy.*—In prosecutions for vagrancy the burden of proof shall not rest upon the state to establish the fact that the defendant has no property sufficient for his support, nor means of a fair, honest, and reputable livelihood, but whenever it shall be established by the proof in any prosecution under this chapter that the defendant has been guilty of wandering or strolling about in idleness, or living in idleness, and is able to work, or that such defendant is leading an idle, immoral, or profligate life, and that such defendant is able to work; or that the defendant being able to work, loafs, loiters, or idles in the places named in subdivision (3) of section 437 of this title, or that such defendant is able and does not work, but hires out his minor children, or allows them to hire out, then, or in either of such events, a prima facie case of guilt is hereby declared to be established in all prosecutions under subdivisions (1–4), (12), and (13) of section 437 of this title, and the burden of proof shall be upon the defendant to show that he has sufficient property from which to obtain a support, or sufficient means of maintaining a fair, honest, and reputable livelihood; and in a prosecution under subdivision (13) of section 437 of this title, the defendant shall not be convicted if his parents, or those occupying that relation to him, are able to support him, and do support him, or if he is in bona fide attendance upon some educational institution, but if the evidence for the defendant is sufficient when considered together with all the evidence in the case to raise a reasonable doubt as to his guilt, he shall be entitled to an acquittal."

*The Mobile Case.*

Reginald V. Broughton, Bobby Haggins, and Joe Davis Holifield, minors represented by their respective parents individually and as class representatives, brought this action against the Governor of Alabama, the Attorney General of Alabama, and various Mobile County and City officials. Jurisdiction was alleged under 28 U.S.C. §§ 1343(1) and (3), asserting rights protected by 42 U.S.C. §§ 1981, 1983, 1985 and 1988. Injunctive and declaratory relief was sought. A three-judge court was convened in accordance with 28 U.S.C. §§ 2281 and 2284.

Plaintiffs sought injunctive relief to restrain defendants and their agents and successors from depriving, under color of law, plaintiffs and others similarly situated of rights guaranteed by the United States Constitution. Plaintiffs also seek a declaratory judgment that the Alabama vagrancy statute is unconstitutional on a number of grounds.[2]

The facts are relatively clear and undisputed.

The three Negro minors, together with two companions not parties herein,[3] were engaged on November 21, 1968, in a handbilling campaign as volunteer workers for the Neighborhood Organized Workers (N.O.W.). The N.O.W. campaign was directed against the downtown Mobile white merchants who were alleged by the organization to be racially discriminatory employers. The message contained in handbills and on placards was addressed primarily to the Negro community and urged that Negroes refrain from making Christmas purchases from the merchants in an effort to pressure them economically into nondiscriminatory hiring.[4] Reacting to the N.O.W. campaign, Mobile Police Chief James Robinson reassigned two Negro patrolmen, Officers Isaac George and Leon Smith, from their predominantly Negro beats to the vicinity of the N.O.W. campaign. Their instructions were to prevent sidewalk obstruction and to arrest any demonstrator who engaged in "intimidation."

At the scene of the demonstration, the demonstrators were instructed by the officers to keep a six foot interval between themselves to avoid sidewalk obstruction. They complied. The officers then moved on, but returned shortly thereafter upon receipt of a complaint from an unidentified white woman who reported that Joe Davis Holifield had intimidated an unidentified Negro woman as she entered a white merchant's store. He was accused of telling the Negro woman she had better not be seen emerging with any purchases. He denied any such statement. Nevertheless, on the basis of the white woman's complaint, *all* of the demonstrators were arrested by Officer George, who informed them the charge was "city vagrancy" and transported them to the city jail.

At the jail, Chief Robinson conferred with City Attorney Fred Collins and thereafter booked the formal charge as violation of the State vagrancy statute

2. The statute is alleged to violate the commerce clause (Art. I, § 8) and the privileges and immunities clause (Art. IV, § 2) of the United States Constitution; the due process, equal protection and privileges and immunities clauses of the Fourteenth Amendment; and the First, Fourth, Fifth, Eighth, Ninth and Thirteenth Amendments.

3. These two individuals were engaged in picketing on the other side of the street when plaintiffs were arrested. The two were arrested simultaneously with plaintiffs herein and jailed under the "anti-boycott" statute, Code of Ala., Tit. 14,

§ 56 (1958 rev.). They were released with plaintiffs on bonds secured at the same time. In light of the Fifth Circuit's decision (Kirkland v. Wallace, 5 Cir. 1968, 403 F.2d 413) voiding the "anti-boycott" statute, charges against these two were ultimately dropped.

4. The campaign closely paralleled activities traditionally engaged in by labor unions seeking recognition and bargaining rights. *Compare* Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 1968, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603.

264

rather than "city vagrancy." [5] Bond for each demonstrator was set at $1000, despite a normal practice of release on no more than $300 bond. Subsequently, at varying times for over eight hours, two respected members of the Mobile community, a Negro grocer and a Negro physician who between them held property assessed in excess of $28,000 according to public records, attempted to secure the release of the young demonstrators. Only after a series of delays and denials during a period from approximately 2:00 P.M. until 11:15 P.M. were the plaintiffs finally released on bonds secured by the grocer and the physician.

■ Plaintiffs, represented by counsel in the City Recorder's Court, demanded a jury trial. They were bound over to await action of the grand jury. Thereafter the instant suit was filed. One regularly scheduled grand jury term intervened before trial in this Court, but no indictment against the plaintiffs has been returned. When asked for the current posture of the cases, the Clerk of the Circuit Court of Mobile County officially certified them as "awaiting action." Plaintiffs have been charged *generally* as "vagrants"; and no specification of the particular subsections upon which the criminal proceeding will be predicated has been officially made.[6]

■ By answer to interrogatories propounded in the instant case, plaintiffs have learned that they will be prosecuted under section 437(1), (2) and (3). Defendants uniformly state, moreover, that they will rely upon proof that the plaintiffs each "admitted not working and not going to school, continuing [their] prior practice of loitering in public places" in order to make out a prima facie case before reliance upon section 439.[7] The defendants also indicate that prosecution would involve the fourth alternative clause in section 439.[8] The plaintiffs, on the basis of the interroga-

5. Officer George testified that the usual bond for city vagrancy was $100, while the State charge carried a $300 limit. The officer admitted that he personally knew each of the plaintiffs, that he knew they were students (the arrest occurred on a school day), and that he knew students were exempt from application of the State vagrancy law. [The statutory exemption in section 439 appears to be expressly applicable only to violations of section 437(13), *supra*]. Nevertheless, he acknowledged that he did not make any statement concerning his personal knowledge concerning the demonstrators; and he claimed that he had nothing to do with the formal charges.

6. An indictment for vagrancy, under Alabama law, is sufficient which charges simply, "A.B. was a vagrant." Code of Ala., Tit. 15, § 259, Form 111. Like language is sufficient in an information or complaint filed by the prosecuting attorney. Hallmark v. State, 1939, 28 Ala.App. 416, 185 So. 908. *Cf.* Mitchell v. State, 1961, 41 Ala.App. 254, 130 So.2d 198, 202, 204. In Alabama an accused is not entitled to a bill of particulars so long as the indictment or information is drawn in compliance with the language of the Code. Jones v. State, 1903, 136 Ala. 118, 34 So. 236. *Accord*: Danley v. State, 1949, 34 Ala.App. 412, 41 So.2d 414, 415. *See* Brannon v. State,

1917, 16 Ala.App. 259, 76 So. 991 (vagrancy case). *See also* Brooks v. State, 1948, 33 Ala.App. 390, 34 So.2d 175.

7. Before the State may shift the burden of coming forward with evidence of property ownership or some means of livelihood to an accused vagrant under section 439, the Court of Appeals of Alabama has consistently held that a prima facie case must be made out under one or more of the subsections of section 437. McConnell v. State, 1966, 43 Ala.App. 146, 182 So.2d 577. Moreover, the presumption of innocence has been held never to disappear. Snitzer v. State, 1941, 29 Ala. App. 597, 199 So. 745, 746. The last clause of section 439 provides: " * * * wandering or strolling about in idleness, or living in idleness, and is able to work * * *."

8. That is probably a clerical error, for this clause reads: " * * * that such defendant is able to work and does not work, but hires out his minor children, or allows them to hire out * * *." This alternative does not fit the facts upon which defendants contend they will predicate the cases. The first three alternative clauses appear to parallel section 437(1) to (3) and would seem the logical alternatives upon which to rely under section 439.

tories, contend that this case is ripe for decision with respect to the facial validity of subsections (1), (2) and (3) of section 437, as read in conjunction with section 439.[9]

*The Tuscaloosa Case.*

A loosely-knit coalition of plaintiffs [10] bring this comprehensive class action seeking to vindicate the constitutional rights of the "student community" allegedly trenched upon by the Attorney General of Alabama, the Tuscaloosa County District Attorney, and the Tuscaloosa City Prosecuting Attorney. Jurisdiction is alleged under 28 U.S.C. §§ 1331, 1343(3) and (4), asserting rights protected by 42 U.S.C. § 1983. Plaintiffs seek injunctive relief as a bar to present or future enforcement of the State vagrancy statute and the enumerated ordinances. They also seek a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that the State vagrancy statute and the enumerated city ordinances are so vague and overbroad as to be invalid on their face as violative of the First and Fourteenth Amendments to the United States Constitution. A three-judge court was convened in accordance with 28 U.S.C. §§ 2281, 2283 and 2284.

At the outset, we are constrained to conclude that we are unable to entertain so much of the Tuscaloosa case as is predicated upon an attack on the city ordinances. Nowhere in the pleadings is there included the texts of the respective enumerated ordinance sections. The motion to dismiss filed by City Attorney Richard Shelby specifically notes that, while the plaintiffs' complaint attacks certain sections of the Code of Ordinances of Tuscaloosa, "yet [it] fails to allege either the text or substance of the offending ordinances." In addition, City Attorney Shelby, in his Answer to the Complaint, notes that no justiciable controversy existed with respect to City Ordinance §§ 23–7 (disorderly houses) and 23–14 (loitering).[11] Notwithstanding the above failure to specifically append to their complaint an official copy of the relevant ordinance provisions, plaintiffs further failed to introduce certified copies thereof into evidence. Only plaintiffs' brief contains any attempt to reproduce the enumerated ordinance sections. The pleadings and evidence being wholly lacking of any official or certified copy of the relevant ordinances under attack, we conclude that we are legally precluded in the ab-

---

9. Although both in brief and at trial plaintiffs limited their discussion primarily to subsections (1), (2) and (3) of section 437, they contend that the same arguments as to facial unconstitutionality equally condemn subsections (7), (8), (12) and (13).

No attempt was made by plaintiffs to deal with subsections (4), (5), (6), (9), (10) and (11) in brief or at trial.

10. James Baines, an unsuccessful Congressional candidate and erstwhile youth leader, attacks the Tuscaloosa vagrancy ordinance (§ 23–39) under which he was arrested. Benjamin Phillips, a newspaper photographer with the *Southern Courier*, attacks the Tuscaloosa disorderly conduct ordinance (§ 23–6) under which he was arrested. Robert and Peggy Ford, William and Judy Moody, Thomas Konda, Harold Ledbetter and Michael Stambaugh —all university students and either proprietors or customers of a "mod" or "hippy" curio shop, the "Haight Hut," —challenge the State vagrancy statute

(see note 1, *supra*) under which they were arrested. Finally, the "Haight Hut" plaintiffs are joined by Charles Spradling, Ed Still, Knox Argo, and Steve Suitts, all university students, in a separate challenge to both the State statute and the city ordinances, alleging a chilling effect on their rights of expression. For some unknown reason, the complaint also seeks equitable relief against the actual or threatened enforcement of Tuscaloosa ordinances dealing with disorderly houses (§ 23–7), loitering (§ 23–14), and nuisance (§ 23–15), although neither the pleadings nor the evidence indicate that any of the plaintiffs have standing to challenge these particular ordinances. Cf. Davis, Standing: Taxpayers and Others, 35 U. Chi.L.Rev. 601 (1968) (interest or adverse affectation required).

11. The answer apparently overlooked the enumeration of City Ordinance § 23–15 (nuisance). However, there appears to be no justiciable controversy involving this section either. *See* note 10, *supra.*

sence of statutory authorization from taking judicial notice of such ordinances.[12] Relief must be denied as to so much of the complaint as pertains to the Tuscaloosa ordinances for failure of plaintiffs to plead or prove the ordinances under which they were arrested and charged.

With the justiciable controversy before us limited to the attacks upon the State vagrancy statute, we proceed to a consideration of the relevant facts.

On Friday, October 4, 1968, Tuscaloosa police officers, possessing a search warrant for narcotics, made a raid on a curio shop (the "Haight Hut"), licensed under State and city law and catering to what might be generally described as "mod" or "hippy" clientele. The law enforcement officials presented the search warrant to Robert Ford, a co-owner of the shop and a university student.[13] Pursuant to the warrant, the officers searched the premises for evidence of L.S.D., amphetamines and other illegal drugs for which the warrant had been secured. Bud G. Silvis, a co-owner of the shop and a university chemistry student, was arrested on a narcotics charge and certain chemicals found in the shop were seized, together with assorted items apparently from shop inventory.[14]

Simultaneously with the narcotics raid, the law enforcement officers searched and subsequently arrested Ford, Ford's wife Peggy, Mr. and Mrs. William Moody (friends of the Fords), Harold Ledbetter, Michael Stambaugh, and an unidentified student and his date (neither of whom are parties to this case). The arresting officers, after taking the above-named individuals (all of whom are university students) to the police station and conducting a thorough, though apparently fruitless, search of each of them, charged each of them with "vagrancy." The charges against Ledbetter, Stambaugh, and the two unidentified students were dropped prior to committal hearing.

On October 11, 1968, the Fords and the Moodys appeared in Tuscaloosa County Court. They were told by Judge Mayfield that their cases had not been docketed or, if they had been, that the Sheriff of Tuscaloosa County had not brought the warrants to court. They were told to return on October 17, 1968. They again discovered their cases had not been docketed. Although they have made a number of inquiries, individually and through legal counsel, they have continually received evasive answers from all sources; and, at the time of this trial, they were unable to state with precision either the nature of the charge

12. Code of Ala. of 1940, Tit. 7, § 429(1) (Judicial notice by Alabama courts is taken only of ordinances of cities with population over 200.000 according to 1960 census. *Compare* Shell Oil Co. v. Edwards, 1955, 263 Ala. 4, 81 So.2d 535, *cert. denied*, 350 U.S. 885, 76 S.Ct. 139, 100 L.Ed. 780 (Birmingham ordinances judicially noticed) *with* Carter v. City of Gadsden, 1956, 264 Ala. 544, 88 So.2d 689 (Gadsden ordinances not judicially noticed). *See* Herrmann v. Robinson, Ala.App.1966, 192 So.2d 251 (Court of Appeals required by Tit. 7, § 429(1) to notice City of Mobile ordinances since its 1960 population exceeded 200,000). *Cf.* Tipp v. District of Columbia, 1959, 69 App.D.C. 400, 102 F.2d 264, 265; Roloff v. Perdue, N.D.Iowa 1939, 31 F.Supp. 739; District of Columbia v. Petty, 1911. 37 D.C.App. 156, *aff'd* 1913, 229 U.S. 593, 33 S.Ct. 881, 57 L.Ed. 1343; Choctaw O. & G. R. Co. v. Hamilton, E.D.Okl.1910, 182 F. 117. In the

language of Circuit Judge Van Devanter: "An ordinance is not a public statute, but a mere municipal regulation; and, to make it available in establishing a charge of negligence, it must be pleaded, like any other fact of which judicial notice will not be taken." Robinson v. Denver City Tramway Co., 8 Cir. 1908, 164 F. 174, 176. IX Wigmore on Evidence § 2572, pp. 552 and 271–274 (3d ed. 1940 with 1964 Supp.).

13. Ford and his wife, Peggy, used two back rooms of the curio shop as their living quarters.

14. Ford testified that the shop was opened with an inventory having a $1000 book value. He stated that incense from this inventory had been strewn about the shop floor during the raid and that approximately $100 worth of beads, posters and Oriental water-pipes used for smoking were placed in a sack taken from the premises by the officers.

against them or the posture of their cases.[15] Defendants, during testimony at trial, were also unable to inform the court just what was the nature of the charges against the Haight Hut plaintiffs or what is the posture of their individual cases.

## I.

■ Pursuant to Rule 23(c) (1), Fed. R.Civ.P., "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." To be maintainable as a class action, a suit must meet all of the requirements set out in section 23(a) and also fall within the ambit of at least one subsection of section 23(b).[16]

■ Following the *Eisen* guidelines, we determine that the named plaintiffs in *Broughton* (the Mobile case) are adequate representatives of a class consisting of all persons whose poverty or lack of apparent means of livelihood renders them susceptible to arrest under the present Alabama vagrancy laws, and against whom the vagrancy laws have been or may be applied to repress constitutionally protected rights of free expression. See Smith v. Hill, E.D.N.C. 1968, 285 F.Supp. 556, 559.

■ Likewise, based upon *Eisen*, we determine that the Fords, the Moodys, Konda, Ledbetter and Stambaugh are adequate representatives of a class consisting of all persons whose particular activities or unorthodox way of life renders them susceptible to arrest under the Alabama vagrancy laws *on suspicion only* (rather than probable cause), and particularly of students against whom the vagrancy laws have been or may be applied in derogation of their Fourth and Fourteenth Amendment rights.[17]

---

15. No effort was made to use discovery procedures after the filing of this federal suit, such as enabled the plaintiffs in the Mobile case to narrow the charge to specific subsections of the State vagrancy statute. *See* text accompanying and following note 6, *supra*.

16. *See* Eisen v. Carlisle & Jacquelin, 2 Cir. 1968, 391 F.2d 555, 560, 561. *See generally* 3A Moore, Federal Practice ¶ 23, pp. 58–59, 67–79, 87–88 (Supp. 1967) ; 2 Barron & Holtzoff, Federal Practice §§ 562, 562.4, 567, pp. 81–94, 100–101, 107–108 (Wright ed. Supp. 1968) ; Fed.R.Civ.P. 23, 28 U.S.C.A. (Supp.1968).

17. Although involving unrelated activity by city police at an off-campus demonstration and in conjunction with a narcotics raid separated by three weeks time and affecting different plaintiffs, the *Baines* complaint was predicated upon a First Amendment theory implying, in effect, that the Tuscaloosa police were engaged in a concerted campaign to suppress free expression by the student community. On its face the complaint may be sufficient to support a class, represented by the diverse plaintiffs, constituting the entire student community. Yet, Fed.R.Civ.P. 23(c)(1) states: "An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." We are constrained to narrow the originally asserted class after reviewing the pleadings and the evidence.

First, for failure to plead and prove the relevant ordinances, the challenges to the several Tuscaloosa ordinances are no longer material to a decision on the merits of this case. Second, the State statute was used not in the context of a First Amendment protected activity such as occurred in *Broughton*, but rather as a "catch-all" charge on which to make simultaneous arrests and searches of suspicious persons at the scene of a narcotics raid. Finally, the individual plaintiffs seeking to represent the student community as "apprehensive" about engaging in First Amendment protected activities include not only the Haight Hut plaintiffs who attended the rally at which Baines and Phillips were arrested for ordinance violations, but also four individuals who were wholly uninvolved in the Haight Hut incident and who were merely present at the later rally. When confined to a consideration of the application of the State vagrancy statute to students arrested in conjunction with a narcotics raid, decision of the case can be limited to the Fourth Amendment issue.

Plaintiffs Konda, Ledbetter, Stambaugh, Robert and Peggy Ford, and William and Judy Moody adequately represent all interests relevant to the case we must decide on the merits. And the grounds for their relief may be predicated upon Fourth Amendment guarantees—

## II.

With the respective classes defined, our next consideration is the various motions to dismiss filed by the defendants in each case.

Motions to dismiss were individually or jointly filed in *Broughton* by the Governor of Alabama, by the Attorney General and the Chief of Police of Mobile, by the Sheriff of Mobile County, and by the District Attorney of the Thirteenth Judicial Circuit (Mobile County). In many respects, these motions substantially parallel each other.[18]

The facts in *Broughton* clearly reveal that Chief Robinson was directly responsible for the arrests, charges and bail involved in the case. City Attorney Collins advised him at least with respect to the setting of bail. Mayor Mims is the chief executive officer of Mobile and is responsible for the conduct of his law enforcement officials. Since the cases against the three plaintiffs are "awaiting action" before the grand jury, District Attorney Booth may well be called upon to prosecute them. The Governor and Attorney General of Alabama are responsible for enforcement of all State criminal laws and exercise at least constructive authority over statewide application thereof. Only Sheriff Bridges has been conclusively shown, by the pleadings and the evidence, to have had absolutely nothing to do with the *Broughton* case.[19]

For the above reasons,[20] the various motions to dismiss in *Broughton* are denied, except as to Sheriff Bridges, which motion is granted.

---

possessed by student and nonstudent alike —to be free from search, seizure and arrest, even in conjunction with a narcotics raid, except upon probable cause to believe they have committed a criminal act.

18. Each avers that the complaint failed to state a claim upon which relief can be granted; that the vagrancy statute relates to individual conduct and cannot be challenged by class action; that plaintiffs simply may not maintain their suit as a class action (presumably, though never amplified, on some basis grounded in Fed.R.Civ.P. 23); that the complaint shows a pending State court prosecution is underway and relief must be confined to State court; that all matters of defense to a State court prosecution, including challenges based upon federal constitutional claims, should be considered and determined in State courts; that 28 U.S.C. § 2283 precludes federal court injunction of State court proceedings; and that the plaintiffs have adequate remedies in State court. In addition, the motion by the Governor and Attorney General contends that the 5-day notice provision of 28 U.S.C. § 2284 was not complied with so that they should be dropped from the case; and it notes that the complaint merely named them in their official capacities, implying that there was no enumeration of any action on their part with regard to the factual application of the State statute. Similar contentions are made by all other defendants, with Chief Robinson claiming that the sole allegation as to him is that he set the bail of each plaintiff at $1000. Only Sheriff Bridges' motion expressly disclaims *any* involvement in the vagrancy arrests and *any* past attempt to apply the vagrancy statute against the plaintiffs or their class. Finally, the motion of the Mobile City officials asserts that this Court is without jurisdiction in this case since the complaint fails to raise either a substantial claim of statutory unconstitutionality or a substantial federal question.

19. The plaintiffs stipulated that Sheriff Bridges was not involved in the *Broughton* arrests and that he had never threatened enforcement of the State vagrancy laws against demonstrators representing the Mobile County Negro community.

20. The class action justifications urged for granting motions to dismiss are adequately treated in Part I, *supra*. The 5-day notice provision of 28 U.S.C. § 2284 was waived when the Governor and Attorney General filed their answer to the complaint and made a general appearance through counsel at trial. See McDonald v. Mabee, 1917, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608; 2 Moore, Federal Practice ¶ 4.02[3], p. 954 (1968 ed.). The abstention doctrine, urged on the basis of 28 U.S.C. § 2283 and on the theory that plaintiffs have an adequate remedy for vindication of their federal rights in State court, will be answered more specifically, *infra*, part III.

In the *Baines* case, only defendant Richard Shelby, Tuscaloosa City Attorney, filed a motion to dismiss. We previously noted that he expressly challenged plaintiffs' failure to plead "the text or substance of the offending ordinances." The Attorney General of Alabama and the District Attorney of Tuscaloosa County filed answers to the complaint, generally denying that the State statute was either unconstitutional on its face or as applied, and generally averring that the complaint fails to state a claim against them individually upon which relief can be granted. *See* Fed.R.Civ.P. 12(b) (6).

Because we have denied relief on the merits as to so much of the complaint as is predicated on city ordinances neither pleaded nor proved, we find it unnecessary to rule on the motion to dismiss of City Attorney Shelby.

The test applied to a rule 12(b) (6) motion is well established:

> "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Conley v. Gibson, 1957, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80; *See generally* 2A Moore, Federal Practice ¶ 12.08, p. 2245 n. 6 (1968 ed.). Applying this standard to the answers of the Attorney General and the Tuscaloosa County District Attorney, we are bound to deny their threshold defenses. The answer of District Attorney Lackey implicitly admits that he applied the vagrancy statute to the Haight Hut plaintiffs. The Attorney General, as chief State law officer, defends as constitutional on its face the State statute, though he disclaims any actual knowledge of the application thereof to the particular plaintiffs during the Haight Hut narcotics raid. The rule 12(b) (6) motions, contained in defendants' answers to so much of the complaint as pertains to the State vagrancy statute, are denied.

### III.

The *Broughton* defendants contend that 28 U.S.C. § 2283 bars any grant by this court of the injunctive relief against State court prosecution sought by plaintiffs. The question was not raised in *Baines*.

■ The facts appear to indicate that no State court proceedings were presently pending in either case when these suits were filed. It would appear, though we need not decide the question in light of our decision on the merits, that 28 U.S.C. § 2283 is inapposite.[21] Certainly the anti-injunction statute has no application where bad faith prosecution is merely threatened.[22]

In light of our declaratory judgment, *infra*, on the merits prior to the matters coming before any State court to be determined, we find it unnecessary to grant the injunctive relief sought in either *Broughton* or *Baines*.

### IV.

■ The questions of abstention and injunctive relief are different.[23] In a case of claimed overbreadth of a statute, the Supreme Court has held "that a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." Zwickler v. Koota, *supra* n. 23. We find this duty

---

21. *Compare* Sullivan v. Alabama State Bar, M.D.Ala.1969, 295 F.Supp. 1216 [Feb. 4, 1969]; Graham v. Brewer, N.D. Ala.1968, 295 F.Supp. 1140 [May 21, 1968].

22. *See* Dombrowski v. Pfister, 1965, 380 U. S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22; Note, Bad Faith Prosecutions of Civil Rights Matters in State Courts—Future Developments of Subjunctive Relief in Federal Courts, 1 Ga.L.Rev. 656, 658 (1967).

23. Zwickler v. Koota, 1967, 389 U.S. 241, 254, 88 S.Ct. 391, 399, 19 L.Ed.2d 444; *see* Dombrowski v. Pfister, *supra* 380 U. S. at 483–492, 85 S.Ct. 1116.

particularly compelling here because no State court is presently in a position to decide the validity of the vagrancy statute and our abstention would force litigants to vindicate their constitutional rights by submission to a later criminal proceeding. *See* McDonald v. Brewer, N.D.Ala.1968, 295 F.Supp. 1135 [May 21, 1968].

In *Broughton*, plaintiffs attack the vagrancy statute on a plethora of constitutional grounds.[24] Likewise, in *Baines*, plaintiffs attack the State statute on due process, equal protection and reversal of the presumption of innocence grounds, as well as on availability to those seeking to suppress free expression guaranteed by the First Amendment.[25]

24. *See* note 2, *supra*. Principal emphasis is placed on the theory that the vagueness and overbreadth of the statute is inherently destructive of First Amendment rights protected from State action through the Fourteenth Amendment. *See e. g.*, Dombrowski v. Pfister, *supra* note 22. *See also* NAACP v. Button, 1963, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405; Hunter v. Allen, N.D.Ga.1968, 286 F.Supp. 830 (on appeal to Fifth Circuit); Carmichael v. Allen, N.D.Ga.1967, 267 F.Supp. 985; Baker v. Bindner, W.D.Ky.1967, 274 F. Supp. 658. The statute is attacked also on grounds that vagueness and overbreadth result in failure to give the requisite notice. This theory is best summed up by Mr. Justice Frankfurter's dissent in Winters v. New York, 1948, 333 U.S. 507, 540, 68 S.Ct. 665, 682, 92 L.Ed. 840:

> "These [vagrancy] statutes are in a class by themselves, in view of the familiar abuses to which they are put. See Note, 47 Col.L.Rev. 613, 625. Definiteness is designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of the police and prosecution, although not chargeable with any particular offense."

*See* Ricks v. District of Columbia, D.C. Cir. 1968 [No. 20919, Dec. 23, 1968], 37 U.S.L.W. 2367, and the companion case of Ricks v. United States, D.C.Cir. 1968, [Dec. 23, 1968], 37 U.S.L.W. 2368. *See also* Smith v. Hill, E.D.N.C.1968, 285 F.Supp. 556; Baker v. Bindner, *supra* 274 F.Supp. at 662. The *Smith* case collects the citations to several commentaries criticizing the dragnet or catch-all nature of vagrancy laws. *See generally* Foote, Vagrancy-Type Law and Its Administration, 104 U.Pa.L.Rev. 603 (1956) (vagrancy offense is "garbage pail of the criminal law"). The susceptibility of vagrancy laws to "government by the moment-to-moment opinions of a policeman on his beat" was challenged as arbitrariness contravening due process. *See* Cox v. Louisiana, 1965, 379 U.S. 536, 579, 85 S.Ct. 453, 13 L.Ed.2d 471 (Mr. Justice Black, concurring).

The statute is challenged as an affront to constitutionally guaranteed freedom of movement. *See e. g.*, Aptheker v. Secretary of State, 1964, 378 U.S. 500, 505–506, 84 S.Ct. 1659, 12 L.Ed.2d 992; Kent v. Dulles, 1958, 357 U.S. 116, 127, 78 S. Ct. 1113, 2 L.Ed.2d 1204; Edwards v. California, 1941, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119; *Cf.* United States v. Guest, 1966, 383 U.S. 745, 757, 86 S.Ct. 1170, 16 L.Ed.2d 239. It is cited as violative of Fourth Amendment rights to be arrested, searched, or detained only on probable cause, not mere suspicion. *See* Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L.J. 1 (1960). It is alleged to place the burden of proving innocence on the accused in violation of the Fifth Amendment. *Cf.* Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. The statute is called a violation of the Thirteenth Amendment in that it forces compulsory employment upon those wishing to remain idle or deprives them of liberty without due process contrary to the Fourteenth Amendment. *See* the peonage cases: Bailey v. Alabama, 1911, 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191; Taylor v. Georgia, 1942, 315 U.S. 25, 62 S.Ct. 415, 86 L.Ed. 615; Pollock v. Williams, 1944, 322 U.S. 4, 64 S.Ct. 792, 88 L.Ed. 1095. The statute is claimed to be violative of the Fourteenth Amendment's equal protection guarantee. *See* Edwards v. California, *supra* 314 U.S. at 174, 62 S.Ct. 164, 86 L.Ed. 119; *cf.* Harper v. Virginia State Board of Elections, 1966, 383 U.S. 663, 668, 86 S.Ct. 1079, 16 L.Ed.2d 169. Finally, plaintiffs allege the vagrancy statute violates Fourteenth Amendment due process, violates rights reserved to the individual by the Ninth Amendment, and imposes cruel and unusual punishment in contravention of the Eighth Amendment by condemning the "status of indigency." *See* Robinson v. California, 1962, 370 U.S. 660, 667, 82 S.Ct. 1417, 8 L.Ed.2d 758; Driver v. Hinnant, 4 Cir. 1966, 356 F.2d 761; *but see* Powell v. Texas, 1968, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254.

25. The *Baines* brief also devotes considerable emphasis to the "status" theory. *See* note 24, *supra*.

## V.

Our consideration of the merits can be brief. The plaintiffs in both *Broughton* and *Baines* were charged simply with "vagrancy," although the *Broughton* plaintiffs did succeed, through interrogatories in this civil case, in ascertaining which subsections were applicable to them.

■ For several reasons, we conclude that section 437 cannot be construed alone or, for that matter, only in light of State court interpretations narrowing its application. *Cf.* Wright v. City of Montgomery, 5 Cir. 1969, 406 F. 2d 867 [Jan. 27, 1969]. Alabama criminal procedure must also be taken into consideration.

First, we note that the definition of a "vagrant" is used disjunctively, *i. e.*, a person merely falling within the scope of but one of thirteen subsections in section 437 may be found guilty of the criminal offense. Brannon v. State, 1917, 16 Ala.App. 259, 76 So. 991. Second, a complaint is sufficient, under current Alabama procedure, if it simply charges that "A.B. is a vagrant." *See* note 6, *supra.* Third, we note that proof of vagrancy need only be adduced at trial under any one of the thirteen subsections under which the State chooses to prosecute. Flandell v. State, 1944, 31 Ala.App. 520, 19 So.2d 401. Fourth, Alabama criminal procedure does not provide an accused with a right to a bill of particulars whereby he may narrow the application

of section 437 to the precise subsections to be applied against him. *See* note 6, *supra.* Collier v. State, 1918, 16 Ala. App. 425, 78 So. 419.

In light of the interaction of the substantive statutory offense and Alabama criminal procedure, we find it necessary to consider but one of the numerous constitutional challenges to the statute, alleged by plaintiffs in both cases.[26]

■ We hold and declare that section 437 of Tit. 14, Code of Alabama, 1940 in its entirety, when considered with applicable Alabama criminal procedural law, is so vague that it violates the fair notice requirements of due process guaranteed by the Fourteenth Amendment to the Constitution of the United States, and is unconstitutional and void.[27]

According to evidence introduced at trial, it is not clear that any plaintiff charged with vagrancy under the State statute has a State court proceeding pending against him. This court finds it unnecessary to consider the request made for injunctive relief against future State prosecution. In light of our decision today, we do not anticipate that prosecutions for vagrancy will be commenced. Nevertheless, we expressly retain jurisdiction over these cases for a period of twelve months from this date, during which period the plaintiffs may move for any further relief which may appear necessary or appropriate.

The law having been so declared, costs are taxed against the defendants.

26. *See* notes 24 and 25, *supra*, with accompanying text.

27. *See* Lanzetta v. New Jersey, 1939, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed.2d 888; Connally v. General Const. Co., 1926, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322; Zwickler v. Koota, *supra* 389 U.S. at 249–250, 88 S.Ct. 391, 19 L.Ed. 2d 444; Cameron v. Johnson, 1968, 390 U.S. 611, 615–617, 88 S.Ct. 1335, 20 L. Ed.2d 183. *See generally* Dowling and Gunther, Cases and Materials on Constitutional Law 823–824 (7th ed. 1965).