HALL, Circuit Judge,
Concurring in the Judgment.
I concur with the result reached by the majority opinion because I agree that Ma-hon lacked Article III standing to sue the Ticor defendants. I disagree, however, with the majority’s implication that the juridical link doctrine and Article III standing are wholly independent. (See Maj. Op. 63-64.) Both implicate the same jurisprudential concern-delimiting who may bring another person’s case. Thus, while it is true that the mere invocation of the juridical link doctrine cannot bestow Article III standing that otherwise would be lacking, there will be cases in which the presence of a juridical link will suggest that Article III is also satisfied. While the doctrines are logically distinct, they are not necessarily independent.
Citing inter alia Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the majority correctly explains that a plaintiff, to prove Article III standing, must generally allege an injury to herself. But that rule is less universal than the majority’s succinct footnote lets on. Notwithstanding Lujan and similar cases, which describe the general requirements for Article III standing, a long line of Supreme Court and Second Circuit cases has allowed certain plaintiffs, in certain limited situations, to bring claims that are not strictly their own. Collectively, these exceptions can helpfully be termed jus tertii standing, or standing premised on the permission to assert a third party’s rights. Cf. Robert Allen Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale L.J. 599, 600 (1962).
In some cases, a plaintiff has been permitted to bring claims on behalf of a third party who is unlikely to be able to sue. See, e.g., Powers v. Ohio, 499 U.S. 400, 410-11, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (parties in a litigation allowed to raise the claims of prospective jurors to be free from discriminatory jury selection); Eisenstadt v. Baird, 405 U.S. 438, 443-44, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (doctor prosecuted for distributing contraceptives allowed to assert rights of his patients to have access to contraceptives); Barrows v. Jackson, 346 U.S. 249, 257-58, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953) (individual sued for breaching a racially restrictive covenant allowed to assert the rights *67 of blacks in the community); see also Campbell v. Louisiana, 523 U.S. 392, 397, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998) (applying Powers to a white defendant’s challenge to the exclusion of black jurors). Other cases have permitted a plaintiff with a sufficiently “close” relationship to a third party to assert that third party’s rights. See, e.g., Craig v. Boren, 429 U.S. 190, 193, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (bartender challenging law permitting eighteen-year-old women, but not men, to buy 3.2% beer); Singleton v. Wulff, 428 U.S. 106, 114-17, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (physicians challenging state statute that prohibited Medicaid payments for nontherapeutic abortions). Still others have allowed plaintiffs to bring First Amendment overbreadth challenges on behalf of others. E.g., Sec’y of State of Md. v. J.H. Munson Co., 467 U.S. 947, 958, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). Individual citizens may bring qui tam actions on behalf of the government, see 31 U.S.C. § 3730(b); Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 773-74, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (False Claims Act can be regarded as “a partial assignment of the Government’s damages claim,” and so it is the United States’ injury in fact which confers Article III standing on the qui tam relator), and states can bring parens patriae suits on behalf of their citizens, see Connecticut v. Physicians Health Services of Connecticut, Inc., 287 F.3d 110, 119 (2d Cir.2002); but see Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 607, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982) (state must articulate an interest apart from the interests of the particular private parties). Although the literal language of Lujan might be read to foreclose Article III standing in all these scenarios, case law both pre-and post-Lujan continues to permit these claims, notwithstanding the absence of a direct injury to the plaintiff.[1]
It is never easy to generalize from individual exceptions, but most of the jus tertii doctrines rest, as unifying principle, on an analytical distinction between claims asserting private interests and those asserting public interests. See 13B Charles Alan Wright et al., Federal Practice & Procedure § 3531.9 (3d ed.2011). ‘When private rights are involved, it is easy to understand that one person cannot seek to recover on a claim that belongs to someone else.” Id. However, “when a party properly in court seeks to sustain its own opposition to a public act by invoking the interests of others,” courts sometimes accept jurisdiction. Id. (emphasis added).
In my view, the same distinction between public and private interests is at the core of the juridical link doctrine. Washington v. Lee, 263 F.Supp. 327 (M.D.Ala. 1966) (three-judge panel), one of the seminal juridical link cases, allowed a class of current and former detainees in local Alabama jails to sue a class of state sheriffs and wardens for violating the detainees’ constitutional rights, even though the named plaintiffs had no contact with many of the defendant class members. Id. at 328-29. Similarly, Broughton v. Brewer, *68 298 F.Supp. 260 (S.D.Ala.1969) (three-judge panel), certified a class of persons “whose poverty or lack of apparent means of livelihood renders them susceptible to arrest under ... Alabama vagrancy laws” to sue most of the state’s law enforcement apparatus, despite the named plaintiffs’ lack of injury at the hands of most of the defendants. Id. at 267 (typographical error corrected). From within this circuit, we have DeAllaume v. Perales, 110 F.R.D. 299 (S.D.N.Y.1986), in which a putative class of New York state welfare recipients sought to challenge a common, state-directed method fifty-eight county commissioners used to calculate certain heating subsidies. Id. at 302. The lone representative plaintiff did not, of course, have a colorable claim against each defendant, but the district court granted certification because “a unified policy link[ed] the members of the proposed defendant class,” and the requirements of Rule 23 had otherwise been satisfied. Id. at 304.
In La Mar v. H & B Novelty & Loan Co., 489 F.2d 461, 469 (9th Cir.1973), the Ninth Circuit distinguished Washington and Broughton, explaining that certification was proper there because the defendants were “juridically related in a manner that suggests a single resolution of the dispute would be expeditious.” Id. at 466, 469. At its core, the “juridical link” present in Washington and Broughton, and absent in La Mar, was the fact that all defendants were government employees who had to follow a uniform state policy.[2] 489 F.2d at 470. Wright & Miller’s discussion of the juridical link doctrine explicitly limits it to suits challenging individual actions that are compelled by state law:
An exception to [the rule that at least one named plaintiff must have standing vis-a-vis each named defendant] has been made in several cases in which the defendant class was composed of public officials, however. In these cases standing has been found even though the representative was injured by the conduct of only one of the officials because the court determined that the defendants were so closely related that they should be treated substantially as a single unit. This approach — sometimes referred to as the “juridical link” test— applies in cases in which as a matter of law each official must act in the same manner, so that the plaintiff class claims are identical for all defendant class members.
7AA Charles Alan Wright et al., Federal Practice & Procedure § 1785.1 (3d ed.2011) (footnotes omitted).
To be sure, some decisions have extended the juridical link doctrine beyond its traditional public-sector locus to create private defendant classes. See William D. Henderson, Comment, Reconciling the Juridical Links Doctrine with the Federal Rules of Civil Procedure and Article III, 67 U. Chi. L.Rev. 1347, 1356-57 (2000) (listing cases). But the doctrine’s root is in concerted government actions. And the situations in which it has been most valuable and least controversial — suits against individuals acting pursuant to a government policy — are also situations in which the Supreme Court’s Article III jurisprudence has been more accommodating to a plaintiffs attempt to sue a defendant who injured someone else. See 13B Charles Alan Wright et al., Federal Practice & Procedure § 3531.9 (3d ed.2011). Some of the values supporting the continuing vitality of the juridical link doctrine are also at play in the Article III context, and in that *69 sense (and that sense only) it is true that “Article III standing issues are inherently intertwined with the class certification determination” in juridical link cases. Vulcan Golf, LLC v. Google Inc., 552 F.Supp.2d 752, 762 (N.D.Ill.2008).
They certainly are not intertwined in the sense that Vulcan Golf would suggest— that the presence of a juridical link can somehow create standing. See Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) (“In no event ... may Congress abrogate the Article] III minima” of standing). But they are not unrelated. The canonical juridical link cases such as Washington, Broughton, and Payton, are cases in which numerous defendants are being sued for acting at the direction of a single governmental policy. To the extent the plaintiffs there were seeking to vindicate public rights, some of the justifications for a more expansive approach to standing might also come into play. Conversely, invoking the juridical link doctrine in a lawsuit attempting to vindicate private rights not only pushes the doctrine outside of its traditional theoretical basis, but also raises serious Article III problems.
Thus, because plaintiffs in classic public rights juridical link cases also are more likely to be able to establish one of the classic public rights exceptions to the direct-injury standing rule, I disagree with the majority’s suggestion that the two doctrines are unrelated.

. I acknowledge that our circuit has said that "third-party standing requirements — unlike mootness requirements — are prudential rather than constitutional in nature." Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 511 n. 5 (2d Cir.2005) (citing Kane v. Johns-Manville Corp., 843 F.2d 636, 643 (2d Cir.1988)). As we explained in Kane, however, "the third-party standing doctrine has been considered a valuable prudential limitation, self-imposed by the federal courts.” 843 F.2d at 643 (emphasis added). Thus it is helpful to distinguish between jus tertii standing, which grants standing by permitting claims that a stricter reading of Article III would prohibit, and the prudential doctrine of "third-party standing,” which withdraws standing that Article III would normally permit.

. A similar fact pattern was present in Payton v. County of Kane, 308 F.3d 673, 680 (7th Cir.2002), although for the reasons set forth in the majority's opinion the Seventh Circuit’s basis for exercising jurisdiction in that case was unsound. (See Maj. Op. 64-65.)