Robert LA MAR et al.,
Appellee,
v.
**H & B NOVELTY & LOAN COMPANY**
et al., Appellant.

Ronald J. KINSLING et al.,
Appellant,
v.
**ALLEGHENY AIRLINES** et al.,
Appellee.
Nos. 72–1485, 73–1271.

United States Court of Appeals,
Ninth Circuit.
Dec. 7, 1973.

Norman T. Ollestad and Alan L. Freedman (argued), of Ollestad & Freedman, Los Angeles, Cal., for appellants.

L. A. Aschenbrenner and Charles J. Merten, Don H. Marmaduke & Noreen K. Saltveit, of Marmaduke, Aschenbrenner, Merten & Saltveit, Portland, Or., Henry C. Thumann, Patrick Lynch, James V. Selna (argued), of O'Melveny & Myers, Los Angeles, Cal., for appellees.

Before ELY and SNEED, Circuit Judges, and SWEIGERT,* District Judge.

SNEED, Circuit Judge:

The common issue of these cases is whether a plaintiff having a cause of action against a single defendant can institute a class action against the single defendant *and* an unrelated group of defendants who have engaged in conduct closely similar to that of the single defendant on behalf of all those injured by all the defendants sought to be included in the defendant class. We hold that he cannot. Under proper circumstances, the plaintiff may represent all those suffering an injury similar to his own inflicted by the defendant responsible for the plaintiff's injury, but in our view he cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury.

In a condensed form the facts of these cases are as follows. In *La Mar* the plaintiff initiated an action against all the pawn brokers licensed to conduct business under the laws of Oregon on behalf of all customers of such pawn brokers to recover either $100 or double the finance charges for alleged violations by the defendant pawn brokers of the Truth-in-Lending Act, 15 U.S.C. §§ 1601–1677.. In his complaint La Mar estimated that there were 33,000 such customers and that the recovery should approximate three million dollars. In fact La Mar did business with only one such pawn broker, the H & B Novelty and Loan Company. The district court determined that La Mar's action was a proper class action on behalf of all those who borrowed from the H & B Novelty and Loan Company as well as on behalf of those who borrowed from all other defendants. Rule 23(b)(3) of the Federal Rules of Civil Procedure was the basis for the court's action. Subsequent to this determination, an interlocutory appeal therefrom was authorized. Thereafter, a settlement between H & B Novelty and Loan Company and La Mar on behalf of himself and all those who did business with H & B, save those who requested exclusion, was approved by the district court. No settlement has been reached with the other named defendants. The appeal before us, therefore,

---

* Honorable William T. Sweigert, District Judge, Northern District of California, sitting by designation.

concerns the appropriateness of the court's determination that La Mar's action was a proper class action with respect to those pawn brokers with whom he had no dealings.

In *Kinsling*, the plaintiff purchased a round trip ticket between Kansas City, Missouri and Augusta, Georgia from Trans World Airlines and Piedmont Aviation Corp. Because there was no published joint fare for the route, a fare construction was required under the applicable tariff rules. The plaintiff alleged that he was overcharged in the amount of $10 in violation of certain provisions of the Federal Aviation Act. This suit was brought against Trans World Airlines and Piedmont Aviation Corp. and the six appellee air carriers on behalf of Kinsling and all others who had suffered a similar overcharge in dealings with these carriers. The aggregate amount of such overcharges in the four years prior to filing the suit was alleged to be approximately eighty million dollars. In due course, the district court dismissed the complaint as to the six appellee carriers on the ground that the plaintiff had no dealings with, nor suffered any injury at the hands of, these carriers. This appeal was taken from that dismissal.

We, therefore, reverse the lower court order in La Mar v. H & B Novelty & Loan Co. et al., No. 72–1485, which designates the case as a proper class action against all defendants other than the H & B Novelty & Loan Co. and direct that the plaintiff's action be dismissed as to such defendants.

In Kinsling v. Allegheny Airlines et al., No. 73–1271, the action of the lower court dismissing the complaint of plaintiff with respect to six of the eight defendants is affirmed.

An explanation of these actions follows and is divided into four parts. To provide some jurisprudential underpinnings to our action, the first part concerns itself with the distinctions between the judicial and administrative process, distinctions which, in our view, must be kept in mind in considering the proper scope of class actions. The second part deals with the standing issue while the third consists of an analysis of Rule 23 of the Federal Rules of Civil Procedure as it relates to the issue before us. Finally, the relevant cases are discussed and, while very few of such cases are directly in point, the resonances of most support our holding.

## I.

### The Judicial Process and the Administrative Process Contrasted

The emergence of the class action inescapably forces consideration of the characteristics of the judicial and administrative processes because its features in many instances are derived from both. In a broad sense, fixing the outer limits of permissible class actions involves the determination of the extent to which proceedings within the judiciary will be permitted to resemble in function the administrative process.

It is obvious to even the casual observer that the two processes have features in common and that there is no bright line between them. Judges, for example, bring to their tasks the same informed judgment about the society within which their rulings operate as do administrators. Also those in executive positions frequently find themselves involved, either in a formal or informal setting, in passing judgment on particular claims presented on the basis of a substantially circumscribed record.

Nonetheless, the archetypes are distinguishable and it is in the interest of the judiciary, as well as the executive, to recognize and maintain these distinctions. There is no need to dwell on them at great length. It is enough to observe that the judicial process generally is concerned with discrete complaints of injury by one or a very small number of alleged wrong-doers. Those invoking the aid of the courts generally have in mind particular relief which can be provided by the court in a relatively easy and expeditious manner. The passivity of the judiciary is underscored by its de-

pendence on the evidence provided by the parties and the relatively narrow scope of possible resolutions of the controversy imposed by the applicable rules of law which it must observe. The attorneys for the parties function in a manner compatible with this structure. The method by which evidence is introduced and the type of evidence that is permissible are rigidly controlled. The forums within which persuasion may be attempted are fixed and the methods of persuasion limited and to a degree quite formal. Finally, and of particular importance to class actions, the attorneys are restrained in their pursuit of clients. While the limits of these restraints continue to perplex the profession, which must function in a world in which advertising and salesmanship are omnipresent, no one will deny that restraints do and should exist. All perceive that they are congruent with the fundamentally passive role of the judiciary.

The administrative process, on the other hand, frequently need not await the specific complaint. It can initiate, *sua sponte*, steps designed to correct perceived evils in accordance with the authority provided it by legislative action or delegation from higher executive authority. Traditionally it represents large and imprecise interests which, at the highest level of abstraction, are designated "the public interest." Continuous oversight, as opposed to intervention by invitation as in the judiciary's case, is a normal administrative function. And, not surprisingly, lawyers function quite differently in the administrative setting. Procedures and forms of persuasion are less hampered, and representation of large groups having broad common interests is quite common.

■ These observations set the stage for an examination of the issues which these two cases present. Class actions, we believe, must be structured so as to conform in the essential respects to the judicial process. This is the principle by which we are guided. It dictates, *inter alia,* that the courts not be available to those who have suffered no harm at the hands of them against whom they complain. They have no standing to sue. It is necessary, therefore, to examine the standing of the plaintiffs to institute the class actions before us.

## II.

### Standing

In the briefs in *Kinsling* and during oral argument of both cases much attention was devoted to problems of the standing. This Court, after reflection, does not believe it is necessary to pass on this issue because in our view, under a proper application of Rule 23 of the Federal Rules of Civil Procedure, the plaintiffs here are not entitled to bring a class action against defendants with whom they had no dealing. That is, for the purposes of these appeals, we are prepared to assume the presence of standing.

Our assumption is not intended to foreclose the issue. It should be observed, however, that in Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); and McCabe v. Atchison, T. & S. F. R. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169 (1914), the Supreme Court, in asserting that one who was not a member of a class could not represent that class, was confronted with plaintiffs who had never been injured by the practices about which they complained. In each case before us, the plaintiff was injured by a method of dealing more or less common to all defendants. It is because of this distinction that we are prepared for the purposes of this appeal to assume standing. No one contends, of course, that there is no case or controversy between the defendants who seek in these cases to be dismissed and their customers. The issue upon which we turn these cases is whether the plaintiff in each case can represent such customers under Rule 23.

## III.

### Rule 23

Prior to its amendment in 1966 Rule 23 suffered from numerous defects;[1] however, there is nothing in the Advisory Committee's Note that suggests that the amendments had as their purpose the authorization of massive class actions conducted by attorneys engaged by near-nominal plaintiffs.[2] The tone of such Note is one of prudence and caution. Certain examples are set forth with the suggestion that they "may be" instances in which a class action is proper. Moreover, the Note requires that the court find that the class action is "superior" to possible alternative procedures.[3] It is in this spirit that Rule 23 is applied here.

Subsection (a) of Rule 23 sets forth four conditions that must be met to justify a class action.[4] We need not dwell on the first two, although it should be noted that the prerequisite that the class be so numerous as to make joinder impracticable strongly suggests that the draftsmen did not have in mind classes so numerous as to present severe issues of manageability.

The third prerequisite is that the claims of the representative parties be typical of the class. Obviously this requirement is not met when the "representative" plaintiff never had a claim of *any* type against *any* defendant. There is nothing in the rule to suggest that the zeal or talent of the "representative" plaintiff's attorney can supply this omission. We believe that this prerequisite is also lacking when the plaintiff's cause of action, although similar to that of other members of the class, is against a defendant with respect to whom the class members have no cause of action. Those who purchased tickets from the six appellee airlines, from whom the representative plaintiff purchased no tickets, have no cause of action by reason of such purchases against the airlines from whom the representative plaintiff purchased. In brief, typicality is lacking when the representative plaintiff's cause of action is against a defendant unrelated to the defendants against whom the cause of action of the members of the class lies.

The fourth prerequisite is that "the representative parties will fairly and adequately protect the interests of the class." This is particularly troublesome in class actions, such as these, in which the injury to any possible representative party is quite small. Either no one of the injured class is a suitable representative or anyone is. From this it may be said to follow that each possible representative party could "fairly and adequately protect the interests of the class."

The difficulty with this position is that compliance with the prerequisite must necessarily be determined more by examination of the fitness of the counsel of the candidate for representative party status than by the attributes of the can-

---

1. In its original form the third type of class action, the "spurious" action, was described as one in which "the right sought to be enforced for or against the class is . . . (3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought." The Advisory Committee's Notes indicate that it was hoped this would permit members of the class to intervene on an ancillary basis and to have "the benefit of the date of the commencement of the action for purposes of the statute of limitations."

2. The discussion of Rule 23(b)(3) emphasizes the importance of an application that achieves "economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." 39 F.R.D. 69, 102–103 (1966).

3. 39 F.R.D. 69, 103 (1966).

4. *(a) Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

didate. Once the ability of counsel becomes the measure by which compliance with the fourth prerequisite is determined, there remains only a formal and technical reason for insisting that there be a representative party at all.

■ Assuming, therefore, that in this type of class action the role of the representative party is largely formal, it is reasonable in our view to design its formal characteristics in a manner that is consistent with what we perceive to be the tone of the Advisory Committee's Note. In keeping with that tone and to reduce the incidence of proceedings in which the trial judge and the representative plaintiff's counsel become a part-time regulatory agency, we assert that a plaintiff who has no cause of action against the defendant can not "fairly and adequately protect the interests" of those who do have such causes of action. This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect. Obviously this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury.[5] Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.[6]

Turning to subsection (b) of Rule 23 the immediate issue is whether the action sought to be maintained in these cases should be measured by the standards of (b)(1) or (b)(3). Because

(b)(2) pertains to situations in which money damages are not the relief sought,[7] it need not be examined. Rule 23(b)(1)(A) authorizes class actions to eliminate the possibility of adjudications in which the defendant will be required to follow inconsistent courses of continuing conduct.[8] This danger exists in those situations in which the defendant by reason of the legal relations involved can not as a practical matter pursue two different courses of conduct. The Advisory Committee's Note makes this clear in discussing Rule 23(b)(1)(A) by its reference to actions to declare bond issues invalid, to fix the rights and duties of a riparian owner, and to determine a landowner's rights and duties respecting a claimed nuisance.[9]

Infrequently, if ever, will this be the case when the action is for money damages.[10] Certainly the defendants in these proceedings can continue the conduct of which the plaintiffs complain even if the plaintiffs are successful, as the plaintiff in *La Mar* has been, in their individual actions. Their success by its terms does not fix the rights and duties owed by the defendants to others as, for example, would a declaration of the invalidity of the bond issue. We conclude therefore, that Rule 23(b)(1)(A) is inapplicable to class actions which the plaintiffs in these proceedings seek to initiate.

■ Nor do we believe that Rule 23(b)(1)(B) is applicable. The focus of it is upon the effect of an action on behalf of an individual on the interests of those who have rights similar to those of the individual bringing suit, rather than on the danger of imposing incom-

---

5. See Contract Buyers League v. F. & F. Investment, 300 F.Supp. 210 (N.D.Ill.E.D. 1969) and the discussion at p. 470 *infra*.

6. See Broughton v. Brewer, 298 F.Supp. 260 (N.D.Ala.W.D.1969) and the discussion at p. 470 *infra*.

7. 39 F.R.D. 69, 102 (1966).

8. Class actions are authorized when "(1) the prosecution of separate actions by or against individual members of the class could create a risk of

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class."

9. 39 F.R.D. 69, 100 (1966).

10. Whether an action for money damages can ever fall within Rule 23(b)(1)(A) has been the subject of much comment. See Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412, 415 n.5 (S.D.New York 1972).

patible standards of conduct on the defendant.[11] If the individual action inescapably will alter the substance of the rights of others having similar claims, as would an action attacking the reorganization of a fraternal benefit society, the situation falls within Rule 23(b)(1)(B).[12]

In the cases before us the success or failure of the plaintiffs in their individual actions will not inescapably alter the rights of others similarly situated. Their claims are left untouched by separate actions. Neither the *stare decisis* consequences of an individual action nor the possibility of false reliance upon the improper initiation of a class action can supply either the practical disposition of the rights of the class, or the substantial impairment of those rights, at least one of which is required by Rule 23(b)(1)(B).[13] To permit them to do so would make the invocation of Rule 23(b)(1)(B) unchallengeable. There is no indication in the Advisory Committee's Note that any such "boot strap" effect was intended.

In essence, (b)(1)(A) and (b)(1)(B) of Rule 23 are opposite sides of the same coin—a coin which determines suitability for class action by reference to either the awkwardness, irrationality, or the probability of severe prejudice of separate actions. Depriving the plaintiffs in these proceedings of their representative status with respect to defendants whose conduct caused the plaintiffs no injury does not contravene these purposes of Rule 23(b)(1).

This brings us to Rule 23(b)(3), the so-called "spurious" class action.[14] Two prerequisites to use of a class action are

enunciated here. First, questions of law and fact common to members of the class must predominate over questions affecting individual members, and second, the class action must be superior in terms of fairness and efficiency to other means by which an adjudication of the controversy may be obtained. Among the matters that are pertinent in determining whether the prerequisites exist are:

(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.[15]

If the class actions sought to be initiated in *La Mar* and *Kinsling* are to be authorized it must be done by reliance on Rule 23(b)(3). We do not believe such authorization is required. It is our view that the class actions in question here are inferior to other "available methods for the fair and efficient adjudication of the controversy."[16] While it is not necessary for this decision to pass on the effort of the plaintiffs to initiate a class action against the defendant with whom they dealt on behalf of all others who dealt similarly with that defendant,[17] it must be noted that such

---

11. See Donelan, Prerequisite to a Class Action Under New Rules 23, 10 B.C.Ind. & Com.L.Review 527, 541 (1968).

12. Rule 23(b)(1)(B) authorizes a class action when separate actions create the risk of "(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."

13. *Ibid.*

14. 3B Moore's Federal Practice, § 23.45 (1969).

15. F.R.C.P. § 23(b)(3).

16. Ibid.

17. The clear trend of authority for actions alleging a violation of the Consumer Credit Protection Act, commonly known as the "Truth-in-Lending Act", 15 U.S.C. § 1601 et seq. and Regulation Z, 12 C.F.R. § 226.1 et

suits are more manageable and that nothing said here precludes such actions. Thus, even though La Mar and Kinsling may not represent the classes for whom they here seek to initiate a class action, it may well be that a representative plaintiff injured by each defendant may emerge to undertake the burden which we are preventing La Mar and Kinsling from assuming.[18]

[6] Our finding of "inferiority" of the class actions here attempted also is based upon the belief that restrictions on the flexible language of Rule 23 are a necessary contribution to the effort to avoid the intractable problems of massive class actions [19] and to maintain a wholesome degree of difference between the judicial and administrative functions. While our holding is not a cure-all, it does constitute modest and needed therapy. By the same token, it does not destroy the "spurious" class action. It remains alive and quite capable of providing both justice and mischief.

The positions we have taken make it unnecessary for us to deal extensively with the responses to the questions put to appellee La Mar by this Court pertaining to the effect of the settlement by La Mar with the defendant H & B Novelty and Loan Company on behalf of himself and those customers who dealt with H & B. This settlement was entirely proper, but our holdings are in no way dependent on the existence of such settlement.

## IV.

### The CASES

The trend of the cases support the results which the holdings above represent. Because most of the cases involve facts and legal issues different from those here before us, the cases cited generally will not be squarely in point. However, they illustrate the direction toward which the wind is blowing.

Quite persuasive and frequently cited is Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3rd Cir. 1970), cert.' denied 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323. In holding that a shareholder of four mutual funds, who had no primary or personal cause of action against his funds, could not institute a class action on behalf of the shareholders of these funds plus the shareholders of 61 other funds, the court observed, "A plaintiff who is unable to secure standing for himself is certainly not in a position to 'fairly insure the adequate representation' of those alleged to be similarly situated."[20] While the position of the plaintiff in *Kauffman* is distinguishable from that of La Mar or Kinsling in that

seq., promulgated by the Federal Reserve Board, holds that class actions are inappropriate. *See e. g.*, Goldman v. First Nat'l Bank of Chicago, 56 F.R.D. 587 (N.D.Ill., 1972); Garza v. Chicago Health Clubs, Inc., 56 F.R.D. 548 (N.D.Ill., 1972); Shields v. First Nat'l Bank of Arizona, 56 F.R.D. 442 (D.Ariz., 1972); Kriger v. European Health Spa, Inc., of Milwaukee, Wisc., 56 F.R.D. 104 (E.D.Wis., 1972); Wilcox v. Commerce Bank, 55 F.R.D. 134 (D.Kan., 1972) aff'd 474 F.2d 336 (10th Cir. 1973); Kenney v. Landis Financial Group, Inc., 349 F.Supp. 939 (N.D.Iowa, 1972); Gerlach v. Allstate Insurance Co., 338 F.Supp. 642 (S.D.Fla. 1972); Ratner v. Chemical Bank N.Y. Trust Co., 54 F.R.D. 412 (S.D.N.Y.1972).

18. No opinion is expressed here regarding the effect, if any, the filing of these actions may have on the applicable limitation period. *Cf.* Utah v. American Pipe & Construction Co., 473 F.2d 580 (9th Cir. 1973), cert. granted, 411 U.S. 963, 93 S.Ct. 2146, 36 L.

Ed.2d 683; Buford v. American Finance Co., 333 F.Supp. 1243 (N.D.Ga.1971). A pertinent discussion appears in Comment, Involuntary Dismissals of Class Actions, 40 U.Chi. L.Rev. 783 (1973).

19. *Cf.* Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir., 1973), (*Eisen III*). These problems include feasibility of individual notice to members of the class, propriety of use of the "fluid recovery" pioneered in the Drug Cases, State of West Virginia v. Charles Pfizer & Co., Inc., et al., 314 F. Supp. 710 (S.D.N.Y.1970), aff'd 440 F.2d 1079 (2d Cir., 1971), and the permissibility of the preliminary mini-hearing on the merits. For a comprehensive discussion of the problems of Rule 23(b)(3), see Report and Recommendations of the Special Committee on Rule 23 of the Federal Rules of Civil Procedure, American College of Trial Lawyers (1972).

20. 434 F.2d 727, 734.

both of the latter have a direct cause of action against a defendant, the court's language construed literally does not support the position they are urging here. Particularly is this true of the following comment also appearing in *Kauffman*, "In short, a predicate to appellee's right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class." [21]

In a number of attempts to initiate class actions in the securities field, the courts have manifested a marked degree of restraint. For example, the miniscule interest of plaintiffs seeking representative status with respect to 50,000 persons heavily influenced the court in granting the defendant's motion to forbid such status in Richland v. Cheatham, 272 F.Supp. 148, 154 (E.D.N.Y.1967). In Lesch v. Chicago & Eastern Illinois Railroad Co., 279 F.Supp. 908 (N.D.Ill. E.D.1968), a preferred shareholder whose stock was redeemed for cash was held not to be a proper representative plaintiff with respect to preferred shareholders who voluntarily exchanged their stock for common stock. The difference in their situations indicated claims of a different nature which were sufficient to foreclose representation of all preferred shareholders. Similarly it was indicated by footnote in Herbst v. Able, 278 F.Supp. 664, 668, n. 6, (S.D.N.Y. 1967), that purchasers of debentures would not be proper representatives of a class consisting of all security purchasers. Even so strong an advocate of a generous reading of Rule 23 as Judge Weinstein,[22] in Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968), restricted representation to those who purchased stock during the period in which the representative plaintiff owned such stock and also excluded from the class those who purchased debt securities.[23]

Clearly the most nearly apposite case of which we are aware is Weiner v. Bank of King of Prussia, 358 F.Supp. 684 (E.D.Pa.1973), in which the plaintiff who borrowed from one national bank within the court's jurisdiction sought to bring suit against all the national banks within the court's jurisdiction on behalf of all the "customers and/or borrowers of national banks in this District". It was held that Rule 23 does not affect the plaintiff's lack of standing to sue those banks with whom he had no dealings.

The cases that are cited to support the result rejected in *Weiner, supra*, predominantly are actions to validate civil rights. While Rule 23 has no "civil rights version", it is not surprising that its interpretation is more generous in this type of case than in others. Even so the cases do not support the plaintiffs here. In Washington v. Lee, 263 F. Supp. 327 (M.D.Ala.N.D.1966), the plaintiffs were, or had been, incarcerated in various detention facilities of the State of Alabama, its counties, cities, and towns. Their suit was against the Commissioner of Corrections, members of the Board of Corrections, the Sheriff of Jefferson County and all other sheriffs of Alabama, the Warden of the Birmingham jail and all other wardens and jailers of city and town jails in Alabama. Its purpose was to obtain a declaration of the rights of Negro citizens not to be segregated while incarcerated. Obviously there were many facilities in which the plaintiffs had not been detained even though their wardens or jailers were named defendants. Nonetheless, the fact that the plaintiffs had been confined in several of the facilities was deemed sufficient to provide standing and to satisfy the requirements of Rule 23. Aside from the somewhat broad and accommodating concept of standing in civil rights cases,[24] it is also

21. *Ibid.*

22. See Weinstein, The Class Action Is Not Abusive, 167 New York Law Journal Nos. 84, 85 (1972).

23. Also see In Re Penn. Central Securities Litigation, 347 F.Supp. 1327 (E.D.Pa.1972).

24. Singleton v. Board of Commissioners, 356 F.2d 771 (5th Cir. 1966).

true that all the defendants were officials of a single state and its subordinate units of government. Their legal relationship distinguishes them from the defendants the plaintiffs La Mar and Kinsling seek to envelop in their class action. Moreover, it was just these juridical links that were used in Broughton v. Brewer, 298 F.Supp. 260 (N.D. Ala.W.D.1969), to fix the identity of those defendants properly included in the plaintiff's class action to declare Alabama's vagrancy laws unconstitutional brought on behalf of "all persons whose poverty or lack of apparent means of livelihood renders them susceptible to arrest under" [25] such laws.

The existence of similar links distinguishes Samuel et al. v. University of Pittsburgh et al., 56 F.R.D. 435 (W.D. Pa.1972). Despite the fact that the representative plaintiffs attended only the University of Pittsburgh, a class action against those state universities which adhered to the rule about which the representative plaintiffs were complaining was sustained. A common rule applied by instrumentalities of a single state presents a situation quite unlike that here before us. It is true that Judge Teitelbaum, who delivered the opinion in *Samuel,* permitted it to lead him into what we believe to be error in Haas v. Pittsburgh National Bank et al., 60 F. R.D. 604 (W.D.Pa.1973), in which he decided the issue before us contrary to what we here hold. In *Haas* Judge Teitelbaum appeared to believe that a common commercial practice was enough to serve as the legal link present in *Washington, Broughton,* and *Samuel.* With this we do not agree.

Finally, Contract Buyers League v. F. & F. Investment, 300 F.Supp. 210 (N.D. Ill.E.D.1969) should be mentioned. It too is a civil rights case relating to discrimination against Negroes in real estate sales in Chicago in which the language of the opinion does not easily suggest the limitation on class actions we are announcing. However, the court in

*Contract Buyers League* did point out that the defendant's action was concerted and "resulted from a concert and pattern of discriminatory activity including other similar contracts." [26] No such allegation is made by the plaintiffs in the case before us.

Because reason and authority so indicate, La Mar v. H & B Novelty & Loan Co. et al., No. 72–1485 is reversed, and Kinsling v. Allegheny Airlines et al., No. 73–1271 is affirmed.