**George and Effie BARKER et al., Plaintiffs,**

v.

**FSC SECURITIES CORPORATION et al., Defendants,**

**Margaret Flannes Miller et al., Intervenors.**

**Tom CREVISTON et al., Plaintiffs,**

v.

**FINANCIAL SERVICES CORPORATION et al., Defendants.**

Civ. Nos. 88–6052, 88–6066.

United States District Court,
W.D. Arkansas,
Hot Springs Division.

Dec. 4, 1989.

Elizabeth J. Robben, Friday, Eldredge & Clark, Little Rock, Ark., Bryan J. Reis, Evans, Farrar, Reis & Love, Sky Tapp, J. Sky Tapp Law Offices, Hot Springs, Ark., for Barker.

Q. Byrum Hurst, Hot Springs, Ark., for Creviston.

Vince Foster, Jr., Rose Law Firm, Little Rock, Ark., Donald Harkleroad, Harkleroad & Hermance, P.C., William Long, Parker, Johnson, Cooke & Dunlevie, Atlanta, Ga., for FSC and Financial Services Corp.

John G. Lile, Wright, Lindsey & Jennings, Little Rock, Ark., for Enterprise and Monyco.

Stephany Slagle, Hot Springs, Ark., for Millers.

Collins Kilgore, Little Rock, Ark., for Iwon.

## MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

Between 1975 and 1988, Gene Flannes served as manager of the corporate defendants' branch office in Hot Springs, Arkansas. Flannes promised plaintiffs that he would place their money in securities or other investments, but instead converted their funds to personal use. After Flannes disappeared from Hot Springs in 1988, plaintiffs filed this suit against Flannes's present and former corporate employers, as well as various officials and stockholders of such employers, alleging securities fraud, common-law fraud, conversion, breach of fiduciary duty, negligence, and liability as "controlling persons" under federal securities statutes. The facts of this action are discussed more thoroughly in the court's opinion denying summary judgment. *See Barker v. FSC Securities Corp.*, No. 88–6052, slip op. (W.D.Ark. Nov. 3, 1989).

On December 21, 1988, plaintiffs moved for class certification. The motion was referred to the Hon. Beverly Stites, U.S. Magistrate for the Western District of Arkansas. On April 19, 1989, the magistrate issued her proposed findings and recommendations. The magistrate recommended appointment of a class which would include:

All persons who, from February 1, 1976, to May 1, 1988, invested in purported money market accounts through Gene Flannes, Walter Iwon, or Norman Mason, registered representatives of WestAmerica or FSC Securities in Hot Springs, Arkansas, and who realized an economic loss when Gene Flannes left Hot Springs on or about April 7, 1988, with some or all of the investment funds.

Both sides have filed responses and reply briefs. Defendants argue that class certification is inappropriate, because plaintiffs have failed to meet the requirements of Fed.R.Civ.P. 23(a)(1), 23(a)(3), and 23(b)(3). Plaintiffs generally endorse the magistrate's recommendations, but suggest that the class definition be modified. Each of the parties' arguments will be addressed in turn.

### I.

■ Fed.R.Civ.P. 23(b)(3) provides that an action may be maintained as a class action if:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Defendants contend that individualized issues predominate over those common to all class members, because class members' claims differ as to the scope of Flannes's apparent authority, the validity of their contract claims, whether the statute of limitations has run, which defendants are liable under plaintiffs' negligent supervision and "controlling person" claims, the validity of defendants' contributory negligence defense, which state's law governs, and

whether Flannes acted within the scope of his actual authority. The court must determine whether any of these questions are in fact individualized, and must balance the individualized issues against those which are common to all class members.

The Eighth Circuit has held that, under Arkansas law:

> Two elements must be established to support a showing of apparent authority: "(1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." *Central Surety & Ins. Corp. v. O. & S. Wholesale Co.*, 193 Ark. 523, 101 S.W.2d 167, 172 (1937) (quoting 2 C.J. *Agency* § 213, at 574).

*Wal–Mart Stores, Inc. v. Crist*, 855 F.2d 1326, 1331 (8th Cir.1988), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989). Defendants argue that individual questions predominate as to both elements of apparent authority.

■ The first element of apparent authority is whether the principals knowingly or negligently permitted their agents to claim that they were acting within the scope of their authority. This element involves the conduct of the principal rather than that of the plaintiff.

In its opinion denying summary judgment, the court held that the most important evidence of apparent authority was Flannes's NEFCO stationery, which implied that NEFCO sold securities through FSC, and NEFCO's fraudulent Kemper Fund account statements, which mention FSC, and which were apparently mailed to FSC. Presumably, these documents were sent to all class members.[1] Defendants nevertheless argue that individual issues predominate, because other representations by Flannes and his agents, both oral and written, differ as to different plaintiffs. Even if this argument is factually correct, the court cannot find at this time that such representations are particularly material to the first element of apparent authority, because defendants have not shown that they were or should have been aware of such claims. As noted above, a finding of apparent authority is based on the principal's conduct and not that of the agent.

A more plausible argument is that class members who dealt with Flannes when he worked for WestAmerica (now known as Enterprise Fund Distributors, Inc.) have different claims from those class members who dealt with Flannes when he represented FSC. Indeed, the two most important items of evidence suggesting apparent authority, the Kemper Fund statements and Flannes's NEFCO stationery, mention FSC but not WestAmerica.

On the other hand, FSC and WestAmerica were commonly owned between 1979 and 1983, and Financial Services Corporation made Flannes an FSC agent by transferring WestAmerica's securities business to FSC. Under the circumstances, it could be inferred that if Flannes had apparent authority for his acts after 1983 (when he switched from WestAmerica to FSC), he probably had apparent authority before 1983. Accordingly, the court finds that common questions of law and fact predominate as to the first element of apparent authority.

■ The second element of apparent authority requires an inquiry into the reasonableness of plaintiffs' beliefs, as opposed to the reasonableness of defendants' action or inaction. Defendants suggest several reasons why the question of reasonable belief might require separate decisions for separate class members.

---

1. Admittedly, Flannes's account statements differ among themselves. On the other hand, it is not clear from the evidence that defendants believed that Flannes was engaging in Kemper Fund transactions as to some plaintiffs but not as to others. It may be that class members received varying statements at varying times, but that all members at one time or another received statements referring to defendants, and that defendants received copies of such statements.

First, defendants argue that class members had varying understandings of NEFCO's role. The key question in this case, however, is not Flannes's authority from NEFCO, but his authority from FSC and WestAmerica. Accordingly, the court finds that this argument is without merit.

Second, defendants note that certain class members utilized Flannes's services in connection with his real estate, insurance, and landscaping businesses. The court fails to see how these facts relate to plaintiffs' understanding of the securities business or sophistication as investors. Therefore, the court finds that this argument is without merit.

Defendants also argue that the oral and written misrepresentations by Flannes and his agents vary substantially, and that as a result, plaintiffs should reasonably have had, and in fact did have, different beliefs as to the relationship between Flannes and defendants. Defendants appear to have raised two separate arguments on this issue. First, defendants argue that plaintiffs had different subjective opinions as to the Flannes/FSC relationship, and that some plaintiffs had no idea that Flannes was an agent of the defendants. For instance, defendants claim that Ralph Pyron, one of the defrauded investors, knew nothing about FSC. Pyron has also stated, however, that he believed WestAmerica and NEFCO to be the same company, and other class members also appear to have been aware of defendants' existence.

Second, defendants argue that even if plaintiffs believed that Flannes acted within the scope of his agency, some plaintiffs' beliefs were more reasonable than others'. In other words, defendants suggest that some plaintiffs reasonably relied on Flannes's assertions of authority, while others relied unreasonably. The Advisory Committee's notes on Fed.R.Civ.P. 23 state that "a fraud case *may* be unsuited for treatment as a class action if there was *material* variation in the representations

made or in the kinds or degrees of reliance by the persons to whom they were addressed." Notes of Advisory Committee on Rules, 1966 Amendment, Subdivision (b)(3) (emphasis added). In this case, it is not yet possible to determine how "material" the variations in the representations were, or what the "degrees of reliance" by plaintiffs were, without trying this case on the merits. *Cf.* 7B C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure: Civil* 2d § 1781 at 50 (1986) (consideration of reliance in securities fraud cases "on class action certification would be an improper intrusion into the merits of the case"). To the extent this court can sort out such matters, it finds that the differences between and among defendants' oral and written misrepresentations were not material,[2] and that the question of reasonable belief therefore involves common issues as to all class members. Accordingly, the court finds that the question of apparent authority raises common issues as to all class members.

## II.

■ In count 5 of the complaint, plaintiffs allege that defendants are liable for breach of contract. Defendants argue that class members have materially different contract claims, because their contracts and their understanding of such contracts varied.

On the other hand, defendants admit that Flannes breached the contract. Thus, defendants are liable on all contracts if Flannes was acting within the scope of his actual or apparent authority. The court has found above that common questions of law and fact predominate as to the question of apparent authority. It follows from this that common questions also predominate as to plaintiffs' contract claims.

## III.

■ Defendants also argue that questions regarding the statute of limitations

---

2. For instance, NEFCO's bankruptcy receiver states that at any given time, plaintiffs' financial statements were "virtually identical," and Norman Mason, one of Flannes's employees, stated

that his representations over time were identical, and were based on information provided by Flannes.

will not be common to the class. It has been held that where some class members' claims, but not others', are barred by the statute of limitations, class certification should not be barred. *See Dirks v. Clayton Brokerage Co.,* 105 F.R.D. 125, 132 (D.Minn.1985) (where 900 plaintiffs from different states filed suit, differences among state statutes of limitations did not bar certification); and *Ramsey v. Arata,* 406 F.Supp. 435, 441 (N.D.Tex.1975) (certification appropriate where "[t]he only individual questions will be in regard to those who purchased outside the limitations period and who, because they did not discover the violation through reasonable care, should not be included in the class"). Accordingly, the court finds that defendants' argument is beside the point.

### IV.

■ Defendants argue that individualized issues predominate as to plaintiffs' negligent supervision claim, because different individual and corporate defendants supervised Flannes at different times. Thus, defendants reason, not all class members have claims against every defendant. For instance, defendants argue that class members who invested after 1983 have no claim against WestAmerica or the WestAmerica employees who supervised Flannes.

Defendants correctly note that a class action may be inappropriate if the named plaintiff is attempting to "represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury." *La Mar v. H & B Novelty and Loan Co.,* 489 F.2d 461, 462 (9th Cir.1973) (where plaintiff was injured by one pawnbroker and attempted to file class action against all pawnbrokers in state, class certification inappropriate).

The *La Mar* court added, however, that this rule was not "intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id.* at 466 (no "juridical link[ ]," *id.* at 470, between unrelated businesses engaged in similar conduct). This rule has generally been applied in civil rights actions against governmental units, *id.,* but has also been applied in cases unrelated to civil rights. *See, e.g., In re Itel Securities Litigation,* 89 F.R.D. 104, 121–23 (N.D.Cal.1981) ("juridical link" exception applied to justify class certification in securities action against underwriters who sold securities using identical documents).

■ A juridical link sufficient to justify class certification "generally must stem from an independent legal relationship. Partnership, joint enterprise, control, conspiracy, and aiding and abetting all may serve as such a link, since they denote some form of activity or association on the part of the defendants that warrants imposition of joint liability against the group even though the plaintiff may have dealt primarily with a single member." *Akerman v. Oryx Communications, Inc.,* 609 F.Supp. 363, 375 (S.D.N.Y.1984), *aff'd in pertinent part,* 810 F.2d 336 (2d Cir.1987) (no juridical link found).

In this case, WestAmerica and FSC clearly have an "independent legal relationship," *id.,* that of common ownership, which is analogous to a partnership or a joint enterprise. Accordingly, the court finds that the defendants are juridically linked, and that plaintiffs' negligent supervision claim presents common issues of law and fact.

■ Defendants raise a similar argument as to plaintiffs' "controlling person" claims. Defendants argue that because different defendants had the opportunity to control Flannes at different times, class certification is inappropriate. For the reasons stated above, the court finds that the "juridical link" doctrine bars denial of class certification on this basis. Indeed, defendants' argument is even weaker as to the "controlling person" claims, because plaintiffs have sued only the two corporations which owned both WestAmerica and FSC (Monyco and Financial Services Corporation), and the individual defendants. As

most of these defendants[3] were involved with Flannes when he absconded with plaintiffs' assets in 1988, all of the plaintiffs were harmed by their alleged misconduct.

## V.

■ Defendants next argue that their contributory negligence defense raises individualized issues, because some class members were more negligent than others. This argument relates primarily to class members' negligent supervision claim, as plaintiffs' other claims relate primarily to Flannes's willful misconduct and therefore could not be barred by their own negligence.[4] Defendants essentially urge the court to hold that some plaintiffs were negligent and that others were not. The court does not see how it can do this without usurping the role of the jury, and accordingly declines to do so.

## VI.

■ Although most class members reside in Arkansas, some, including certain named plaintiffs, reside elsewhere. Defendants argue that plaintiffs' common-law claims are subject to different states' law, and that certification is therefore inappropriate. On the other hand, plaintiffs argue that certification is appropriate because defendants have not shown that there is any material difference between Arkansas law and that of other states.

Thus, the question presented is whether class certification of pendent state claims is appropriate when some plaintiffs reside outside Arkansas, and no evidence has been presented as to whether there is any material difference between the common law of pertinent states. The courts are divided on this issue. *See, e.g., Simon v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 482 F.2d 880, 883 (5th Cir. 1973) (where 6,000-person class was proposed, court holds summarily that "the geographical dispersion of the alleged rep-

resentations would bring into issue various state common-law standards," thus rendering certification inappropriate); *Gorsey v. I.M. Simon and Company, Inc.*, 121 F.R.D. 135, 140 (D.Mass.1988) (where neither side has performed choice-of-law analysis, certification denied); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 558 (D.Mass. 1988) (certification denied, because "[p]laintiffs bear the burden of showing that the requirements of Rule 23 have been met" and had not done so); and *Kassover v. Computer Depot, Inc.*, 691 F.Supp. 1205, 1213 (D.Minn.1987) (court holds without discussion that local fraud law could not be applied to all class members, and class certification therefore inappropriate); *but see contra In re Orfa Securities Litigation*, 654 F.Supp. 1449, 1462–63 (D.N.J.1987) (even if laws of different states apply, defendants must show that "differences in state law doctrines of fraud and negligent misrepresentation would be substantial enough to lead the court to deny certification of the class"); *In re Activision Securities Litigation*, 621 F.Supp. 415, 430–31 (N.D.Cal.1985); and *Dekro v. Stern Brothers and Co.*, 540 F.Supp. 406, 418 (W.D.Mo. 1982) (court "will not decertify these classes simply because there *may* be variations among the states") (emphasis in original). *See also* 7A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure: Civil* 2d § 1778 at 543–45 n. 30 (1986) (numerous cases on both sides cited).

The court holds that the better view is that the defendants must establish material differences among relevant state laws, for three reasons. First, defendants state that the putative class "contains members who reside in at least three different states (Arkansas, Texas, and Indiana)." Where only three states are involved, it is quite possible that their laws are identical. Second, even if relevant state laws vary, it is not yet clear whether such differences would outweigh the factual and legal issues otherwise present in this litigation.

---

**3.** The corporate defendants owned FSC and WestAmerica in 1988, but it is unclear how many individual defendants worked for FSC at that time.

**4.** As plaintiffs note, Arkansas has adopted the comparative fault doctrine. *See* Ark.Code Ann. § 16–64–122.

Finally, it is well settled that a court "should apply its own local law unless there is good reason for not doing so." R. Leflar, L. McDougal III, and R. Felix, *American Conflicts Law* § 102 at 288 (4th ed. 1986); *see also* 1A C.J.S. *Actions* § 19 at 345–46 (1985). It follows from this that defendants must establish material differences between the laws of relevant states. As defendants have not made such a showing, the court will not deny class certification based on choice-of-law considerations.[5] Even if certification of common-law claims is inappropriate, the court could still certify federal claims. *See Priest*, 118 F.R.D. at 558 (class certification granted as to federal claim only).

### VII.

■ Plaintiffs contend that defendants' affidavits to the Arkansas Securities Department gave Flannes actual authority to act as he did. These affidavits stated that defendants were bound by their agents' representations. On the other hand, defendants argue that because these affidavits contain different language and refer to different time periods, the class members' claims of actual authority raise individualized issues.

In its opinion denying summary judgment, the court held that the meaning of the affidavits was unclear, and might well be relevant only as evidence that Flannes and FSC had agreed to similar terms. As it is unknown whether such a contract even existed, let alone whether it changed over time, the court cannot find at this time that the question of actual authority raises different issues as to different class members.

### VIII.

Defendants also argue that because there are numerous individualized issues, a class action would not provide a "fair and efficient adjudication of the controversy," as required by Fed.R.Civ.P. 23(b)(3). This argument is derivative from defendants' argument that individualized issues pre-

dominate, and is equally without merit. The court therefore finds that class certification is appropriate under Fed.R.Civ.P. 23(b)(3).

### IX.

Finally, defendants argue that class certification is inappropriate under Fed.R. Civ.P. 23(a)(1) and 23(a)(3). Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Defendants argue that the proposed class is not sufficiently numerous, because it must be divided into numerous subclasses. This assertion rests on the assumption that class members' claims differ materially, an assumption which has been rejected above. Thus, certification cannot be denied on this basis.

Defendants correctly note, however, that not all plaintiffs thought they were investing in money market accounts, as required by the class definition. This objection may be met by redefining the class as all persons who invested with Flannes and his agents, regardless of whether they thought their money was being placed in money market accounts.

Defendants also claim that plaintiffs are not typical of the class, as required by Fed.R.Civ.P. 23(a)(3), because "the claims of each plaintiff are so individualized." This argument has been rejected above in the context of Fed.R.Civ.P. 23(b)(3).

In sum, the court finds that class certification is appropriate under Fed.R.Civ.P. 23.

### X.

Plaintiffs accept the magistrate's conclusion that class certification is appropriate, but have proposed two minor modifications. Defendants have not objected to either modification. First, plaintiffs suggest that instead of including only persons who invested their money with Flannes between 1976 and 1988, the class should be expanded to include persons who invested prior to

---

5. Accordingly, the court need not address plaintiffs' argument that Arkansas law applies to its common-law claims.

1976. The court sees no reason why this suggestion should not be adopted.[6]

Second, the magistrate's class definition includes only those persons who suffered an economic loss "on or about April 7, 1988," when Flannes left Hot Springs. Plaintiff points out that Flannes may have converted certain funds prior to April 7, and that no class members should be excluded due to such technicalities. The court will accordingly delete this phrase. Finally, the court will change the phrase "invested in purported money market accounts" to take account of the fact that certain plaintiffs thought they had made different investments.

---

**6.** Although this definition conflicts with the complaint, the court sees no reason why the pleadings may not be amended to conform to the proof.