STATE OF MINNESOTA

IN SUPREME COURT

A22-0928

Court of Appeals

Anderson, J.

Lisa Stone, on behalf of herself and
all others similarly situated,

Appellant,

vs.

Filed: April 3, 2024
Office of Appellate Courts

Invitation Homes, Inc., et al.,

Respondents,

THR Property Management, L.P., et al.,

Defendants.

———————————————

Scott M. Flaherty, Taft Stettinius & Hollister LLP, Minneapolis, Minnesota;

Mark L. Vavreck, Gonko & Vavreck PLLC, Minneapolis, Minnesota;

Thomas J. Lyons, Jr., Consumer Justice Center PA, Vadnais Heights, Minnesota; and

Michael Davey, Full Circle Law, Wyndmoor, Pennsylvania, for appellant.

Jeffrey P. Justman, John W. Ursu, Josiah D. Young, Faegre Drinker Biddle & Reath LLP, Minneapolis, Minnesota; and

Lindsay W. Cremona, Garth G. Gavenda, Jellum Law, P.A., Stillwater, Minnesota, for respondents.

Taylor Brandt Cunningham, Conlin Law Firm, LLC, Minneapolis, Minnesota, for amicus curiae Minnesota Association for Justice.

———————————————

1

S Y L L A B U S

When standing is challenged in the district court, a plaintiff's failure to assert standing based on the juridical-link doctrine in the district court forfeits the ability to have the merits of standing under the juridical-link doctrine determined on appeal.

Affirmed.

O P I N I O N

ANDERSON, Justice.

Appellant Lisa Stone rented a property and signed a lease that required her to provide maintenance services for which Stone alleges she was not compensated in violation of Minnesota law. She then began litigation against Invitation Homes, Inc., (Invitation Homes), the parent company of her landlord, and THR Property Management, L.P., (THR Property Management), the manager of the leased property. After these two defendants brought a motion to dismiss the litigation, Stone amended her complaint, adding various subsidiaries of Invitation Homes as defendants. In a motion to dismiss the amended complaint, some of these subsidiaries countered that Stone lacked standing to sue them because Stone had failed to allege that those subsidiaries had caused any injuries.

The district court denied the subsidiaries' motion to dismiss. An interlocutory appeal by these subsidiaries of the standing issue to the court of appeals resulted in a reversal and the dismissal of her claims against the subsidiaries. The court of appeals reasoned that Stone lacked standing to bring her claims under the theory for standing found by the district court, and the juridical-link doctrine was improperly raised by Stone for the first time on appeal and in any event did not apply here. Stone now appeals to our court,

solely arguing that she has standing against the subsidiaries in this appeal under the juridical-link doctrine, a doctrine that posits that in a class action in which a named plaintiff has not alleged an injury caused by all defendants, a class may be certified when all defendants are linked by a conspiracy or concerted scheme that harmed the class. Although we have not previously discussed the applicability of the juridical-link doctrine in Minnesota, here, because Stone failed to raise the doctrine as a defense to the motion to dismiss in the district court, we affirm the court of appeals.

**FACTS**

Because this appeal is grounded in a motion to dismiss by the respondents, "we look only to the facts alleged in the complaint, accepting those facts as true." *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 325 (Minn. 2019). In doing so, "[w]e construe all reasonable inferences from the facts in favor of the plaintiff." *Id.*

Appellant, and tenant, Lisa Stone executed a lease on a property in Mound with a landlord identified on the lease as 2015-1 IH2 Borrower L.P.; the lease also identified THR Property Management as the manager of the rental property. The lease included a "maintenance credit" addendum that required Stone to maintain the rental property premises by undertaking tasks such as maintenance of landscaping and snow and ice removal. The addendum provided that Stone would be credited for this maintenance through a reduction in monthly rent, but what the left hand gave, the right hand took away—the multi-page lease specified that the dollar amount of the monthly rent reduction was "$0.00" per month. Stone performed the maintenance as required by the lease and

3

subsequently vacated the property by mutual agreement, terminating the lease several months early.

Stone then initiated a putative class-action suit against Invitation Homes (the parent company of landlord 2015-1 IH2 Borrower L.P.), and THR Property Management, the property manager under the lease between the tenant and landlord. She claimed that the lease provisions violated Minnesota Statutes section 504B.161, subdivision 2 (2022), which permits a landlord to require that a tenant make certain repairs or provide maintenance only if adequate consideration is paid by the landlord. Because she received no payment or rent reduction for services rendered, Stone claims that the statutory requirements were not met.[1] The defendants moved to dismiss the suit under Minnesota Rule of Civil Procedure 12.02(e) for failure to state a claim upon which relief can be granted and for lack of personal jurisdiction over Invitation Homes due to insufficient contacts with Minnesota.

Without responding to the defendants' motion, Stone subsequently amended her complaint to add as defendants seven additional subsidiaries of Invitation Homes. These included the subsidiaries with which Stone had a contractual relationship, 2015-1 IH2 Borrower, L.P. and IH2 Property Illinois, L.P.[2] Also named as defendants were IH3 Property Minnesota, L.P.; IH4 Property Minnesota, L.P.; IH5 Property Minnesota, L.P.;

---

[1] The defense to Stone's claims is not relevant in this Rule 12 proceeding, but respondents dispute that no compensation was provided to Stone and suggest that the $0.00 language is a typographical error, and that Stone was actually credited for maintenance.

[2] IH2 Property Illinois L.P. previously owned the property that Stone leased and so is the landlord with whom Stone had a contractual relationship through that property.

2015-3 IH2 Borrower, L.P.; and 2015-2 IH2 Borrower, L.P. (collectively, the Respondent Subsidiaries). Her amended complaint claimed that the defendants breached the aforementioned landlord covenants contained in Minnesota Statutes section 504B.161 (2022); she also asserted a violation of Minnesota Statutes section 325F.69, subdivision 1 (2022), the Consumer Fraud Act, and additionally alleged unjust enrichment and sought declaratory and injunctive relief.

The defendants filed a motion to strike the amended complaint or alternatively moved to dismiss the complaint for lack of standing against the newly added Respondent Subsidiaries. The district court, after finding that the amended complaint was properly filed and thus denying the motion to strike, concluded "that the Amended Complaint's additions are substantive enough to warrant additional briefing," such that "fundamental fairness requires a fresh start," and thus "order[ed] additional briefing on that Motion [to Dismiss]." After this additional briefing requested by the district court, the motion to dismiss the amended complaint, now including as defendants the Respondent Subsidiaries, was ultimately denied.

Relevant to this appeal, the district court denied the motion to dismiss because the court viewed the amended complaint as alleging the use of a "network of alter-ego subsidiaries designed to violate tenants' rights, but crafted to erect artificial legal barriers to individual remedies for such violations." The court's conclusion was grounded on a 10-K tax form attached to the complaint that showed that the joined defendants, which managed properties throughout Minnesota and all used THR Property Management as an authorized agent, are also listed as subsidiaries of Invitation Homes. These subsidiaries

5

also all conducted business as "Invitation Homes." Additionally, the same address for receiving notice was used in the leases across the different subsidiaries. The juridical-link doctrine was never referenced or discussed by Stone or in the district court's order.[3]

After the motion to dismiss was denied, the Respondent Subsidiaries filed an interlocutory appeal of the ruling, claiming that Stone lacks standing because no contractual relationship existed between the Respondent Subsidiaries and Stone.[4] Stone raised the juridical-link doctrine for the first time in her respondent's brief in the court of appeals. On the standing issue, the court concluded that Stone had forfeited the issue of whether the juridical-link doctrine applied in this case. *Stone v. Invitation Homes, Inc.*, 986 N.W.2d 237, 249 (Minn. App. 2023) (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)). The court of appeals also alternatively held that "even if Stone had sufficiently raised the juridical-link doctrine in district court, we are not persuaded that the doctrine applies," explaining that the juridical-link doctrine was not recognized in Minnesota and that, even if it were recognized, Stone had alleged insufficient facts to invoke it. *Id.* at 249–50.

---

[3]     The only previous mention of the doctrine in this litigation was a brief reference in a reply brief filed by the Respondent Subsidiaries in the district court in support of the motion to dismiss the amended complaint. The juridical-link doctrine, discussed in greater detail later in our opinion, essentially permits, in class-action suits, claims against multiple defendants in which not every defendant is alleged to have injured a class representative so long as the defendants are connected by a concerted scheme, conspiracy, or state action under a uniform application of law. *See La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973).

[4]     Invitation Homes, the parent company of the Respondent Subsidiaries, also appealed the district court's order, but on issues that are not before our court.

Stone now appeals to our court, arguing that she has standing against the Respondent Subsidiaries under the juridical-link doctrine, and we granted review on that issue.

**ANALYSIS**

"We review issues of standing de novo." *Thompson v. St. Anthony Leased Hous. Assocs. II, LP*, 979 N.W.2d 1, 6 (Minn. 2022).

Stone asks us to confirm that the juridical-link doctrine is recognized in Minnesota, or failing that conclusion, to formally adopt the doctrine. Stone also asks us to conclude that because of application of the doctrine, she has standing against the Respondent Subsidiaries.[5]

Because Stone did not raise the juridical-link doctrine argument in the district court, we ultimately conclude that it is forfeited and affirm the decision of the court of appeals on that issue. But unlike the court of appeals, we decline to reach the issues of whether the juridical-link doctrine is recognized in Minnesota or whether Stone's amended complaint alleged sufficient facts to support her invocation of the doctrine.

The juridical-link doctrine originates from the federal Ninth Circuit decision, *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973). In *La Mar*, the Ninth Circuit implied that, in a class action in which a named plaintiff has not alleged an injury

---

[5] Although the district court denied the order to dismiss on the basis of an "alter-ego theory," Stone does not argue in favor of that theory on appeal and instead sees it as a mislabeling of the juridical-link doctrine. The court of appeals also rejected the district court's view that the complaint incorporated such an "alter-ego theory," and Stone did not challenge that rejection in her briefing to our court. *Stone*, 986 N.W.2d at 249. We therefore do not engage in any analysis of that theory of standing.

caused by all defendants, a class may be certified when all defendants are linked by a conspiracy or concerted scheme that harmed the class. *Id.* at 466. Since that 1973 decision, the federal circuits have split on whether to recognize the doctrine only for certification purposes or whether it applies as well in standing disputes, or whether it can be used at all. *See, e.g.*, *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 169–71 (D. Mass. 2004) (holding that the juridical-link doctrine may only be applied for purposes of class certification, not standing); *Payton v. County of Kane*, 308 F.3d 673, 678–80 (7th Cir. 2002) (permitting use of the juridical-link doctrine to confer standing where plaintiffs showed an injury "aris[ing] out of a common legal rule . . . that is binding on, and followed to various degrees by," all of the defendants); *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 896 (8th Cir. 2015) (rejecting the juridical-link doctrine as a basis for standing). Our court of appeals also cited *La Mar* in *Streich v. American Family Mutual Insurance Co.*, 399 N.W.2d 210, 215–16 (Minn. App. 1987), *rev. denied* (Minn. Mar. 25, 1987), in support of employing the juridical-link doctrine when certifying a class. But the court of appeals ultimately explained the class at issue failed to meet the requirements of Minnesota Rule of Civil Procedure 23.01 for certification.

Stone argues that, based on the citation of *La Mar* in *Streich*, or because the juridical-link doctrine may be extrapolated from other sources of Minnesota law, she has standing to represent a class against all of the Respondent Subsidiaries because those parties are linked by a common scheme or conspiracy through common ownership by Invitation Homes, as well as by the use of identical leases.

The Respondent Subsidiaries, on the other hand, argue that Stone forfeited the juridical-link argument because she did not make the argument in the district court and in fact did not make any mention of the doctrine until her court of appeals brief. The court of appeals agreed with the Respondent Subsidiaries that the juridical-link argument was forfeited. *Stone*, 986 N.W.2d at 249.

We have previously held that "[i]ssues not raised in the district court but raised for the first time on appeal are considered waived." *State v. Campbell*, 814 N.W.2d 1, 4 n.4 (Minn. 2012).[6] Additionally, we have held that a party may not "obtain review by raising the same general issue litigated below but under a different theory." *Thiele*, 425 N.W.2d at 582; *see also Crowley v. Meyer*, 897 N.W.2d 288, 293 (Minn. 2017). Notably, our holding in *Thiele* was grounded in a standing-related case, "holding plaintiffs who won their case at trial but later lost on appeal 'were under an obligation to preserve their alternative theories for standing to sue.' " *Thiele*, 425 N.W.2d at 582 (quoting *Mattson v. Underwriters at Lloyd's of London*, 414 N.W.2d 717, 721 (Minn. 1987)). We apply the same principle here. Stone's belated effort to invoke the juridical-link doctrine as a basis for standing for the first time on appeal, after standing was squarely challenged before the district court, is forfeited.

But we have also said that we may consider theories not previously argued if a theory may be decisive of the matter at hand and "there is no possible advantage or

---

[6] Although we used the word "waived" in *State v. Campbell*, we now make the distinction that waiver is when a known right is voluntarily relinquished, whereas forfeiture occurs when a party fails to timely assert a right. *State v. King*, 990 N.W.2d 406, 420 n.7 (Minn. 2023). The issue before us is one of forfeiture.

disadvantage to either party in not having had a prior ruling." *Holen v. Minneapolis-St. Paul Airports Comm'n*, 84 N.W.2d 282, 286 (Minn. 1957). Additionally, we have said that "[f]actors favoring review include: the issue is a novel legal issue of first impression; the issue was raised prominently in briefing; the issue was 'implicit in' or 'closely akin to' the arguments below; and the issue is not dependent on any new or controverted facts." *Blakey v. Jones*, 997 N.W.2d 67, 72 (Minn. 2023) (internal quotation marks omitted) (quoting *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 688 (Minn. 1997)).

With the exception that we have not previously addressed the juridical-link doctrine, none of those circumstances are presented here, and we conclude that the juridical-link argument is forfeited. We see no reason to consider the doctrine here.

Notably, the doctrine was neither asserted by Stone in her district court pleadings nor mentioned by the district court in the order denying the motion to dismiss. The district court relied on what it characterized as a network of "alter-ego subsidiaries." Any discussion of the juridical-link doctrine is entirely absent from the amended complaint and the court order.[7] And some of the claims Stone makes here, such as that the juridical-link doctrine is implicit in Minnesota Statutes section 8.31, subdivision 3a (2022), also known as the private attorney general statute, were not raised in the district court, the court of appeals, or the petition for review submitted to our court.

---

[7] Before Stone's brief as respondent in the court of appeals, the only time the juridical-link doctrine was mentioned was in passing in the reply brief of her opponents in the district court—which cannot be the basis for claiming a right to use that theory of standing in our court. *See Thiele*, 425 N.W.2d at 582.

We affirm the decision of the court of appeals to reverse the district court because the juridical-link argument was forfeited by Stone. We note that the court of appeals also provided additional analysis in dicta concerning the doctrine. *Stone*, 986 N.W.2d at 250. We limit our affirmance to the issue of forfeiture, express no further opinion regarding the juridical-link doctrine, and specifically leave for another day the analysis of the status of the doctrine in Minnesota.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.